FRIEDLY et al. v. GIDDINGS et al.

(Circuit Court, D. Vermont. December 9, 1902.)

**1. GENERAL VERDICT—SPECIAL FINDING—NECESSITY.**

The court instructed that, if defendants were actuated by malice, when, in executing a writ of attachment, they broke open the door of the engine room of plaintiff's mill, and stopped the machinery, and carried away the main belt, the jury might give exemplary damages. In reply to a question by the foreman, they were told that they might state, if finding for plaintiff, how much of their verdict was for actual and how much for exemplary damages. *Held*, that a general verdict would not be set aside for want of such statement, as it covered the issues, and whether the court should require more in order to simplify or eliminate questions rested in its discretion.

**2. HARMLESS ERROR.**

The action of the court in not insisting on the special finding, if prejudicial to either, was harmful to plaintiff, rather than defendant.

**3. JUDGMENT NOTWITHSTANDING VERDICT.**

Judgment could not be rendered for the defendant notwithstanding the verdict where the record showed that the issues joined were not immaterial.

**4. INSTRUCTIONS—IMMATERIAL ISSUES.**

In an action for damages by reason of defendants' conduct in executing a writ of attachment by breaking into plaintiff's mill, stopping the machinery, and carrying away the main belt, there was no evidence or claim that plaintiffs might have procured another belt. The court instructed that from what the court and jury knew such belts could not be got at stores and put on, and that defendants would be liable for damages caused by them in keeping the belt until it was replevied. *Held*, that this was merely illustrative of a part of the situation not in issue, and was immaterial, and not prejudicial.

**5. FIXTURES—MACHINERY—MAIN BELT.**

According to the law of Vermont, the main belt of a steam marble mill, connecting the drive wheel with the main shafting, and furnishing the motive power, is a part of the realty.

**6. WRONGFUL ATTACHMENT—EXEMPLARY DAMAGES.**

Where operation of plaintiff's marble mill and quarry, valued at $100,000, together with personalty valued at $40,000, free of incumbrance, was stopped by a sheriff and constable, in executing a writ of attachment, by breaking into the mill and carrying away the main belt, instead of securing a lien of record under V. S. §§ 1101, 1103, exemplary damages might be granted.

**7. SAME—EXCESSIVE VERDICT.**

A verdict for $996 could not be deemed excessive, exemplary damages being allowable, and the actual injury being incapable of definite ascertainment.

**8. FEDERAL COURTS—STATE LAWS.**

A motion for an adjudication by the court that the cause of action arose from the willful and malicious act of the defendants, and that they ought to be confined in close jail, and for a certificate thereof upon the execution, according to V. S. § 1751, cannot prevail, as Rev. St. U. S. § 914 [U. S. Comp. St. 1901, p. 684], providing that the practice, pleadings, and forms and modes of procedure in civil causes other than those in equity and admiralty cases shall conform to those in the state courts, applies to those for procuring the judgment, and not to those subsequent thereto, and section 916 [page 684], entitling the party recovering a judg-

¶ 8. Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Insurance Co. v. Hall, 27 C. C. A. 392.

ment in a common-law cause to similar remedies upon it to those of the state "to reach the property of the judgment debtor," applies to property, and not to the person.

## At Law.

Fred M. Butler and Thomas W. Moloney, for plaintiffs.
Orion M. Barber and James L. Martin, for defendants.

WHEELER, District Judge. The plaintiffs own a marble mill operated by steam, and a quarry connected with it; the realty being worth upwards of $100,000, and the personalty upwards of $40,000, clear of incumbrance. The defendant Giddings, as constable, had a writ of attachment of $12,000 against one of them. He took possession of the mill, nailed up the doors, and left the plaintiffs' superintendent in charge as keeper. The superintendent sent a resignation as keeper to Giddings, and started up the mill. Giddings got the defendant Wilson, who was sheriff of the county, to assist him, and requested the superintendent to shut off steam and stop the machinery, so he could take off the main driving belt connecting the engine with the main shafting, which was refused; and the defendants broke open the engineroom door, shut off the steam, and stopped the machinery, and took off the main belt, and carried it away, which stopped the mill until the belt was replevied and brought back; and then the foundation of the engine was found to be disturbed, and had to be repaired, which further delayed the running of the mill. According to the plaintiffs' evidence, the steam was shut off too suddenly while the machinery was in full motion, and the continuing of the motion by momentum without the steam shook the engine and injured the foundation; but, according to the evidence of the defendants, the shutting off of the steam, however sudden, would not have that effect. There was no evidence or claim that the plaintiffs might have procured another main belt, and started up sooner, to save loss. The court held and instructed the jury that the main belt was a part of the realty, not attachable and removable as personalty, and that the defendants were liable for the damage; that, from what the court and jury knew, such belts could not be got at stores here and put on, and that the defendants would be liable for what damages was caused by them in taking and keeping it away till it was replevied and brought back by the plaintiffs; that, if shutting off the steam by the defendants injured the foundation of the engine so the mill had to be stopped to repair it, the defendants would be liable for the damage caused by that; and that, if the defendants were actuated by malice for oppression, the jury might give exemplary damages. As the jury was about to retire, the foreman asked if they should state how much was for actual and how much for exemplary damages, and they were directed that they might state the amount of each, if any, on the verdict. They returned a general verdict for $996 damages, but did not state what part, if any, was for exemplary damages. The defendants have moved to set aside the verdict for want of a statement as to what were found as actual damages and what as exemplary, because the dam-

ages are excessive, because of the ruling involved, and for judgment notwithstanding the verdict.

It was the duty of the court to require a verdict that would cover all the issues in the case. This was done by the general verdict. Whether the court should require more in order to simplify or eliminate questions saved as to some part of the case was discretionary. Hodge v. Town of Bennington, 43 Vt. 450. The special finding might have obviated questions as to exemplary damages saved by the defendants, but could not raise any not saved in respect to the general verdict. The exercise of the discretion in not insisting upon the special finding did not prejudice the defendants, but rather the plaintiffs, if either.

Judgment could not be rendered for the defendants notwithstanding the verdict here, for the issues were not joined upon the process, and were not immaterial. Gage v. Barnes, 11 Vt. 195. It is founded on the record, and not on evidence. Cobb v. Cowdery, 40 Vt. 27, 94 Am. Dec. 370. The record shows material issues to be tried, and not a right to judgment without trial.

The remark of the court about knowledge of procuring belts was illustrative merely of a part of the situation not in question, and was wholly immaterial.

The most important question is whether the main belt was realty or personalty; for, if it was personalty that could be taken away on the attachment, the verdict ought not to stand as it is. That the belt which connected the drive wheel with the main shafting was a part of the realty seems to be well settled by the law of the state, which is a rule of property, and must govern here in this respect. Harris v. Haynes, 34 Vt. 220, and cases therein referred to. The court there repeated with approval what it had said before about main shafting in such an establishment,—that it "was a constituent part of the mill, on the ground that the shafting was necessary to communicate the motive power to the machinery, and should be regarded as much a part of the mill as a water wheel would be if water applied by means of it furnished the motive power of the mill"; and, as to the things there in question, "we are of opinion that the engine and boilers, the arch mouth and grate, and the shafting and pulleys should be regarded as fixtures and parcel of the realty." This belt took the power from the engine to the main shafting, and was as much a part of the machinery of the power as any of the appliances there mentioned.

The damages found go beyond what could be computed in dollars and cents from any evidence in the case. But the stoppage of such an establishment producing marble through various stages of manufacture for sale and shipment would involve injuries not capable of definite proof or estimate. The evidence showed clearly, from the admissions of the defendants themselves on cross-examination and otherwise, that the belt was removed for the purpose of stopping the mill and harassing the plaintiffs, when, by the laws of the state, at slight expense, a valid and adequate lien could have been created by record upon all the property without disturbing it. V. S. §§ 1101, 1103. Such wantonness was properly subject to exemplary dam-

ages, in the finding of which the jury would not be limited to those actually proved. Earl v. Tupper, 45 Vt. 275; Hoadley v. Watson, Id. 289, 12 Am. Rep. 197. The amount of such damages is so far within the judgment and discretion of the jury in view of the conduct of the party liable to them that it cannot be justly said that here they got outside their province.

The plaintiffs have moved for an adjudication by the court that the cause of action arose from the willful and malicious act of the defendants, and that they ought to be confined in close jail, and for a certificate thereof upon the execution, according to the statutes of the state (V. S. § 1751). The statute of the United States providing that the practice, pleadings, and forms and modes of procedure in civil causes other than those in equity and admiralty cases shall conform to those in the state courts, applies to those for procuring the judgment, and not to those subsequent (Rev. St. U. S. § 914 [U. S. Comp. St. 1901, p. 684]; Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117); and that entitling the party recovering a judgment in a common-law cause to similar remedies upon it to those of the state "to reach the property of the judgment debtor" applies to property, and not to the person (Rev. St. § 916 [U. S. Comp. St. 1901, p. 684]). This motion therefore cannot prevail.

Motions overruled.