**NORMAN LUMBER COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 6972.

United States Court of Appeals
Fourth Circuit.

Argued May 25, 1955.

Decided June 13, 1955.

---

1. Arline v. Brown, 5 Cir., 190 F.2d 180; Ispass v. Pyramid, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184.

Walter R. Jones and Walter R. Jones, Jr., Rockingham, N. C., for appellant.

Elizabeth Dudley, Attorney, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Edwin M. Stanley, U. S. Atty., Greensboro, Robert L. Gavin, Asst. U. S. Atty., Greensboro, N. C., Clyde E. Gooch, Sp. Asst. to U. S. Atty., Salisbury, N. C., and John F. Cotter, Attorney, Department of Justice, Washington, D. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in an action instituted by the United States to protect its right in the timber on a certain tract of land which it had condemned. The timber was that on an 89.6 acre tract in Montgomery County, North Carolina, condemned along with another tract in a condemnation proceeding in the United States District Court for the Middle District of North Carolina in the year

1936. That proceeding was entitled "United States of America v. 1053.2 acres of land", and all persons supposed to have any interest in the land were duly made parties thereto. The 89.6 acre tract was condemned as the property of Mary Ann Watkins, who was claiming under a deed from one Batton to W. E. Watkins. She was made a party individually and as executrix of W. E. Watkins. E. W. Bruton and other heirs at law of E. J. Bruton were also made parties to the proceeding on the ground that they owned adjoining property. The judgment was docketed and indexed in the office of the Clerk of the United States District Court where it was rendered and was docketed, indexed and cross indexed in the office of the Clerk of the Superior Court of Montgomery County, North Carolina, but the names of the Bruton heirs did not appear there in the indexing and cross indexing. The judgment was not registered in the office of the Register of Deeds of Montgomery County, although the judgment in terms required that this be done.

The timber is claimed by the Norman Lumber Company under a timber deed from the Bruton heirs executed in the year 1951, fifteen years after the condemnation. The company contends that the 89.6 acre tract was part of a 356 acre tract belonging to the Bruton heirs and that, while the judgment in the condemnation proceeding is binding upon these heirs since they were parties to the proceeding, it is not binding on the lumber company because, while the judgment was recorded in the office of the Clerk of the Superior Court of Montgomery County, it was not there indexed and cross indexed as to the heirs. It was agreed between the parties that judgment should be entered upon the pleadings and stipulations upon the answer given by the court to two questions, viz.:

"(1) Must a federal judgment of condemnation of land be indexed and cross indexed in the county where the land lies in order to give notice to a purchaser for value without notice of the proceeding?

"(2) Were the paper writings offered in evidence by plaintiff sufficient as matter of law to put the defendant Bruton heirs on notice that a portion of the lands within the boundaries of the 356 acre tract claimed by them was being condemned by the United States Government?"

The trial judge, 127 F.Supp. 518, gave a negative answer to the first of these questions and an affirmative answer to the second, and entered judgment for the United States from which the lumber company has appealed. No question is raised on the appeal as to the answer to the second question, nor does the lumber company contend here, as it did in the lower court, that the judgment should have been recorded in the office of the Register of Deeds of Montgomery County. The sole question before us is whether the rights of the government under the condemnation proceeding are defeated as to the lumber company, which obtained a conveyance of the timber 15 years later, by reason of the fact that the judgment of condemnation was not indexed and cross indexed as to the Bruton heirs. We think as did the judge below that this question must be answered in the negative.

 There can be no question but that the condemnation proceeding, which was a proceeding in rem, gave title to the United States good against the world, as well as against the Bruton heirs who were parties to the proceeding. "Such an exercise of eminent domain founds a new title and extinguishes all previous rights." A. W. Duckett & Co., Inc. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216; United States v. Dunnington, 146 U.S. 338, 350, 13 S.Ct. 79, 36 L.Ed. 996; Dupasseur v. Rochereau, 21 Wall. 130, 135–136, 22 L.Ed. 588; United States v. Winn, D. C., 83 F.Supp. 172. Upon the entry of the judgment and the payment into court of the compensation awarded for the taking of the land, the United States unquestionably acquired good title thereto. This title could not be divested or impaired ex-

cept by law of the United States, and we find nothing in any federal statute which could be given that effect. The North Carolina statutes as to the recording and cross indexing of judgments, have no application to federal judgments of condemnation unless an act of Congress so provides, and we find no such provision. Certainly there is nothing to that effect in the Act of August 1, 1888, 40 U.S.C. § 258, the act which prescribed condemnation procedure at the time of the condemnation here. That section provided:

"The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding."

This was merely extending the provisions of the old Conformity Act of June 1, 1872, 17 Stat. 196, 197, 28 U.S.C. 724, to condemnation proceedings. It related to court procedure, not to registration of muniments of title. Any provision, even of a state condemnation law, "relating to any subject other than practice, pleadings, forms and proceedings is * * * not applicable in a Federal condemnation proceeding." United States v. Certain Lands, etc., D. C., 39 F.Supp. 91, 92; Chappell v. United States, 160 U.S. 499, 513, 16 S.Ct. 397, 40 L.Ed. 510. Under the old Conformity Act of 1872, 28 U.S.C. § 724, the rule was that, even as to practice, pleadings and forms and modes of procedure, the statute applied only to

proceedings for procuring the judgment, not to those subsequent thereto. Friedly v. Giddings, C. C., 119 F. 438, 441, affirmed 2 Cir., 128 F. 355, 65 L.R.A. 327. That docketing and cross indexing of the judgment of condemnation in accordance with state law for the protection of possible purchasers from the condemnee was not regarded as a part of the procedure provided for by the old condemnation statute is properly inferable from the fact that no provision therefor is contained in Rule 71A, 28 U.S.C., which took the place of the statutory procedure.

██ Appellant relies upon the Lien of Judgments Act of August 1, 1888, 25 Stat. 357 codified in 28 U.S.C. 1962, which provides that judgments rendered in United States District Courts shall be a lien on property located in the state "to the same extent and under the same conditions" as state court judgments, upon provision being made by the law of the state for the docketing of such District Court judgments.[1] North Carolina has made statutory provision for the docketing of such judgments. General Statutes of North Carolina, chapter 1, § 237. State court judgments become liens on real estate only when docketed in the office of the Clerk of the Superior Court in the county where the real estate is situate, G.S. § 1–234, and then only if properly indexed and cross indexed showing the name of the judgment debtor. Southern Dairies v. Banks, 4 Cir., 92 F. 2d 282, certiorari denied 302 U.S. 761, 58 S.Ct. 368, 82 L.Ed. 590; Jones v. Currie, 190 N.C. 260, 129 S.E. 605; Wilkes v. Miller, 156 N.C. 428, 72 S.E. 482; Dewey v. Sugg, 109 N.C. 328, 13 S.E. 923, 14 L.R.A. 393; Holman v. Miller, 103 N.C. 118, 9 S.E. 429, 430.

1. 28 U.S.C. § 1962 is as follows: "Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State."

872

The Lien of Judgments Act, however, has no application to a judgment for the condemnation of land under which title is acquired by the condemnor. It relates to the acquisition of. liens upon the lands of those against whom judgments are rendered, not to the transfer of the lands as a result of condemnation. It is worth noting that Congress recognized the distinction in that it passed on the same day two separate and distinct statutes with respect to these matters. Chapter 728 of the Statutes at Large of 1888 was the Condemnation Act, section 2 of which provided for conformity to state practice in condemnation proceeding; chapter 729 was the Lien of Judgments Act. If it had been the intention that the provisions of the Lien of Judgments Act apply to proceedings under the Condemnation Act it would have been easy enough to so provide; and the fact that no such provision was made indicates that nothing of the sort was intended. The language of the Lien of Judgments Act is that "Judgments and decrees rendered in a circuit or district court of the United States within any State, shall be liens on property * *." There is nothing in this to suggest that the validity of judgments of condemnation shall be dependent upon their being docketed in accordance with state law or otherwise.

Whether docketing and cross indexing of federal judgments of condemnation with state court records should be required as a condition of validity as against subsequent purchasers from the condemnee is a matter for Congress, and, so far, Congress has not seen fit to take action with regard to the matter. As was well said by the learned judge below [127 F.Supp. 521]:

> "It is true that it imposes, a severe hardship on attorneys undertaking to examine titles, to have to inquire at the office of the Clerk of the United States District Court before he can be sure that there is no condemnation judgment entered there which is not recorded and cross indexed in the county where the land

lies, but this inconvenience cannot outweigh the public interest in safeguarding and protecting the property of the United States in accordance with the laws of the United States. The United States cannot always have watchers present to observe trespassers who may go upon public lands and commit waste, while the private owner does have an opportunity to keep an eye on his property. The enormous amount of land owned by the United States for various Governmental purposes is such that its disposition cannot be effected in any manner except under a clear mandate of the law duly enacted by Congress."

There was no error and the judgment of the District Court will be affirmed.

Affirmed.