RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0004P (6th Cir.)
File Name: 03a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PEARL SAYLOR, et al.,
     *Plaintiffs-Appellants,*

     *v.*          No. 01-5391

UNITED STATES OF AMERICA,
     *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 00-00398—Jennifer B. Coffman, District Judge.

Argued: October 31, 2002

Decided and Filed: January 7, 2003

Before: KEITH, KENNEDY, and MOORE, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** David L. Drake, ERIC C. DETERS &
ASSOCIATES, Ft. Mitchell, Kentucky, for Appellants. Lisa
E. Jones, UNITED STATES DEPARTMENT OF JUSTICE,
APPELLATE SECTION, Washington, D.C., for Appellee.
**ON BRIEF:** David L. Drake, ERIC C. DETERS &
ASSOCIATES, Ft. Mitchell, Kentucky, for Appellants. Lisa
E. Jones, UNITED STATES DEPARTMENT OF JUSTICE,

APPELLATE SECTION, Washington, D.C., David Y. Olinger, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

———————

**OPINION**

———————

KENNEDY, Circuit Judge.

**I.**

Plaintiffs Pearl Saylor, et al., appeal from the district court's dismissal of their action seeking to quiet title to a tract of land currently in possession of the United States.

The property at issue in this case originally belonged to Alice Asher. Alice Asher died on December 3, 1928, survived by her second husband and five minor children from her first marriage. The state of Kentucky appointed a guardian, W.D. Wilder, for the children, but in 1932, the state removed him and appointed another guardian. At the time of Alice Asher's death, there was a lien against the property at issue in this case. In 1933, creditors filed suit to recover on the lien, and a state court ordered the property sold to pay the judgment. The Saylors argue that this sale was invalid because legal notice of the proceedings never reached Alice Asher's children. According to the Saylors, the state court erroneously believed that W.D. Wilder was still the children's guardian, and therefore service on Wilder failed to give the children notice of the foreclosure.

In 1973, the United States acquired the property at issue in this case in a condemnation action under the Declaration of Taking Act, 40 U.S.C. § 258a. The land was flooded in 1974 as part of the Laurel River Dam Project. In 1990, a federal district court in the Eastern District of Kentucky held a full evidentiary hearing to permit interested parties to present their claims to just compensation for this particular portion of the flooded property. Some of the plaintiffs – specifically, Pearl

to real property, whatever the merit of those challenges." *United States v. Mottaz*, 476 U.S. 834, 851 (1986).

For the foregoing reasons, we AFFIRM the district court's order granting the United States' motion to dismiss.

Saylor, Melvin Saylor, Phil Clark and Mary England – were provided with notice of that hearing, were represented by counsel, and presented their evidence that the 1933 conveyance was invalid because they did not receive proper notice of the action adjudicating the lien against the property. In 1992, the district court dismissed their claim on the merits and awarded compensation to a party with a mutually exclusive competing claim. *United States of America v. 399.02 Acres of Land*, Civ. No. 2243 (E.D. Ky. Oct. 7, 1992).[1] The Saylor heirs did not appeal from that judgment.

Eight years later, in 2000, the instant plaintiffs filed suit against the United States in Kentucky state court, seeking to quiet title to the disputed property. Plaintiffs Pearl Saylor and Melvin Saylor are Alice Asher's children. Plaintiffs Joyce Saylor-Rider, Jerry Saylor, Virginia Saylor-Brooks, Robert Saylor, Don Saylor, Janet Nelson are Alice Asher's grandchildren by her son, Arvil Asher, who is deceased. Plaintiffs Mary England and Phil Clark are grandchildren of Alice Asher by her daughter, Verlie Asher, also deceased. The complaint did not specify a particular statutory cause of action; however, the parties have agreed that the complaint should be construed as one brought under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a.

The United States removed the case to federal district court pursuant to 42 U.S.C. § 1441(b) and § 1442(a)(1). The United States moved to dismiss, arguing that under the QTA there is no jurisdiction over disputes involving land taken by means of condemnation, or, alternatively, that the QTA's twelve-year statute of limitations had expired. The district court reached neither of those issues, instead holding that plaintiffs' claims were precluded by the final judgment in *United States v. 399.02 Acres of Land*.

---

[1] Compensation was awarded to their heirs of Arizona Asher, whose chain of title originates with the 1933 conveyance that the instant plaintiffs challenge as invalid.

Plaintiffs filed a motion to alter, amend or vacate, arguing that claim preclusion should not apply because not all the plaintiffs were parties to the 1992 action, and the court in that action did not conduct a full evidentiary hearing. That motion was denied. The plaintiffs now appeal to this Court.

## II.

In October 2001, appellants filed a motion in this Court to strike appellee's proof brief on the grounds that it was based substantially on documents outside of the record. Appellee United States argued that it had legitimate grounds for citing documents outside of the official record, and also submitted a cross-motion to take judicial notice of those documents. The Clerk's office granted the Saylors' motion to strike the United States' brief, and referred the motion for judicial notice to the hearing panel. The United States argues that the Clerk's office lacked authority to grant the Saylors' motion because that motion was substantive rather than procedural in nature, and the Sixth Circuit rules limit the Clerk's authority to deciding procedural motions.

Because we grant the United States' motion to take judicial notice, the debate about the nature of the Clerk's order and the scope of the Clerk's authority is moot. The additional documents cited by the United States are all part of the official record in *United States v. 399.02 Acres of Land.* Judicial notice is appropriate because the district court below considered and referenced that official record when it found plaintiffs' claims precluded. Even if some of these documents were not officially received into evidence, we have held that the court may take judicial notice of its own record in the prior case on which the claim preclusion argument is premised. *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 441 (6th Cir. 1981) (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 157 n.6 (1969)).

## III.

We review *de novo* a district court's dismissal for failure to state a claim. *Begala v. PNC Bank*, 214 F.3d 776, 779 (6th

Declaration of Taking Act "extinguishes all previous rights," *Duckett & Co. v. United States*, 266 U.S. 149, 151 (1924), and gives the United States title to the property "good against the world." *Norman Lumber Co. v. United States*, 223 F.2d 868, 870 (4th Cir. 1955). *See also Higginson v. United States*, 384 F.2d 504, 507 (6th Cir. 1967). As the First Circuit has noted, "even though, as the *Fulcher* plurality stated, the legislative history of the Quiet Title Act 'is inconclusive about claims of omitted owners arising out of formal condemnation proceedings,' the language of the statute, and its underlying logic, are not." *Cadorette v. United States*, 988 F.2d 215, 225-26 (1st Cir. 1993) (internal citation omitted). *See also Robinson v. United States*, 476 F. Supp. 80, 81 (E.D. Tenn. 1979) (holding plaintiffs' quiet title action is "clearly without merit" because "fee simple title to this 50 acres passed to the United States immediately upon the filing of the notice of taking and the accompanying deposit.")

In short, the Quiet Title Act does not afford appellants a vehicle to recover for the loss of their alleged interest in the property. The QTA's plain language covers only cases in which title itself is disputed. Title here indisputably lies with the United States.

## V.

Even if appellants' claim did fall within the statutory mandate of the QTA, their claim is not timely. The QTA provides for a twelve-year statute of limitations period that begins on "the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). The United States flooded the property in 1974; this clearly constituted notice that it had a claim to the property. The Saylors argue that they did not have notice of their *own* claim on the property until 1990; however, the QTA asks when it was reasonable for plaintiffs to know of the United States' claim, not their own claim. This distinction is deliberate and reflects "a clear congressional judgment that the national public interest requires barring stale challenges to the United States' claims

This case is distinguishable from the Saylors' case. In *Fulcher*, the plaintiffs did not receive proper notice of the condemnation proceeding and thus had not been afforded an opportunity to challenge the vesting of title at the time of the condemnation. The Fourth Circuit adopted an "equitable lien" theory based on the plaintiffs' unfulfilled rights at the time of the condemnation proceeding in order to allow the *Fulcher* plaintiffs to pursue their quiet title action. *Fulcher*, 632 F.2d at 248. In this case, plaintiffs do not allege that they were not properly notified about the condemnation proceeding. To the contrary, at least some of them participated in that proceeding.

Even if we found the facts of this case sufficiently analogous to those of *Fulcher*, its reasoning is suspect. The rationale in *Fulcher* for holding that the QTA permits an action for compensation after a condemnation proceeding rests on two grounds: first, a particular interpretation of the legislative history of the Quiet Title Act; second, a policy preference for adjudicating property-related disputes in a venue near the disputed property. *Fulcher*, 632 F.2d at 283-84. We see no reason to engage in an examination of the Act's legislative history or policy preferences when the plain text of the Act clearly limits its scope to adjudications in which the title or ownership of real property is in doubt. The Declaration of Taking Act provides that upon filing a declaration of taking, "title to the said lands in fee simple absolute, or such less estate or interest therein as specified in said declaration, shall vest in the United States of America and said lands shall be deemed to be condemned and taken for the use of the United States, and right to just compensation for the same shall vest in the persons entitled thereto." 40 U.S.C. § 258a.[2]    A condemnation action under the

---

[2] Appellants do not allege any fact indicating that the United States failed to comply with the procedures laid out in the statute, nor have they challenged the taking as not being for the prescribed statutory purpose. *See, e.g., Higginson v. United States*, 384 F.2d 504, 507 (6th Cir. 1967). Thus, at the time of the condemnation, the United States properly took title to the property.

Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). Claim preclusion applies where there is: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies;' (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action." *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999).

Appellants make three arguments for why claim preclusion should not apply in this case. First, they argue that there was no final decision on the merits in the prior proceeding. Second, they argue that the same parties were not before the court in the prior proceeding. Third, they argue that their constitutional due process claims, brought as a separate cause of action under 42 U.S.C. § 1983, have never been decided by a prior court of competent jurisdiction.

## A.    Final Decision on the Merits

Appellants argue that a final decision was not made in *United States v. 399.02 Acres of Land* because they have since discovered new evidence supporting their claim. This is not a valid basis for dismissing the claim preclusive effect of the district court's prior final judgment on the merits of an identical cause of action. In *United States v. 399.02 Acres of Land*, the district court conducted a full and fair evidentiary hearing, at which at least some of the appellants were represented by counsel,   and presented evidence and testimony. The Saylors also filed objections to the magistrate judge's report and recommendation prior to the district court's final ruling. The fact that appellants' new evidence might change the outcome of the case does not affect application of claim preclusion doctrine. *Harrington*, 649 F.2d at 440 (holding that "[a] mere showing that the second litigation, if allowed to proceed, would produce a different result" is not sufficient to exempt a case from *res judicata* principles).

### B. Same Parties or their Privies

Only four of the ten instant plaintiffs appeared at the 1990 hearing that constituted the basis of the district court's decision in *United States v. 399.02 Acres of Land*. Normally, a judgment is not claim preclusive as to non-parties. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968). The six absent plaintiffs are all the heirs of Arvil Asher, Alice Asher's son. Arvil Asher was not present at the 1990 hearing. Arvil's heirs claim that they were not in privity with their fellow heirs of Alice Asher and therefore *United States v. 399.02 Acres of Land* cannot bar their present claims against the United States.

This argument is without merit. In the context of claim preclusion, "[p]rivity . . . means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods., Inc. v. Heller*, 973 F.2d 474, 481 (6th Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993). *See also Hardy v. Johns-Mansville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982). Even if the descendants of Arvil Asher are not directly successors in interest to the parties actually present at the 1990 hearing, their interests were adequately represented. Arvil's heirs' interest in the land is based on precisely the same claim rejected on the merits by the district court in the prior action -- namely, that the 1933 conveyance is invalid because Alice Asher's children were not given proper legal notice of the action adjudicating the lien against their mother's property. There is not one fact that distinguishes Arvil's heirs' claim from the claim of their aunt, uncle and cousins. Because all the appellants' interests are identical, all were adequately represented by the four heirs of Alice Asher present before the court in the prior proceeding.

### C. The Due Process Claim

For the first time on appeal, the Saylors argue that claim preclusion does not apply to their separate cause of action for violation of their Fifth Amendment due process rights brought under 42 U.S.C. § 1983. This Court will not normally

consider arguments not raised in the district court below. *Issaak v. Trumbull Savings & Loan Co.*, 169 F.3d 390, 396 n.3 (6th Cir. 1999); *Estate of Quirk v. Commissioner of Internal Revenue*, 928 F.2d 751, 758 (6th Cir. 1991). We are all the more reluctant to consider this claim given the appellants' inability to clearly articulate the basis for their § 1983 claim, and their contrary assertions that the sole basis for their cause of action is the Quiet Title Act. To the extent that appellants are reasserting their argument before the district court that the lack of notice of the action adjudicating the lien against the property was a violation of their due process rights, we note once again that this claim was fully and fairly litigated before the district court in *United States v. 399.02 Acres of Land*.

### IV.

On appeal, the United States urges us to affirm on the alternate ground that the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, does not confer jurisdiction to resolve disputes regarding land properly condemned by the United States. The QTA provides that "[t]he United States may be named as a party defendant in a civil action under this section *to adjudicate a disputed title* to real property in which the United States claims an interest . . . ." 28 U.S.C. § 2409a(a) (emphasis added).

Appellants rely on *United States v. Fulcher*, 632 F.2d 278 (4th Cir. 1980), for the proposition that private plaintiffs may seek a remedy under the QTA where the United States has taken land in a condemnation action. *See also United States v. Herring*, 750 F.2d 669 (8th Cir. 1984). In *Fulcher*, a private plaintiff who had not properly been provided notice of the condemnation proceeding sought to quiet title to property which had been condemned by the United States. The Fourth Circuit held that although the plaintiff could not obtain title to the property, which was "vested as an indefeasible title in the government," 632 F.2d at 281, he could seek just compensation under the Quiet Title Act.