Arthur J. FULCHER, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 78–1552.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1980.

Decided Sept. 17, 1980.

Daniel D. Khoury, Manteo, N.C. (Christopher L. Seawell, Aldridge & Seawell, Manteo, N.C., on brief), for appellant.

Robert L. Klarquist, Dept. of Justice, Washington, D.C. (James W. Moorman, Asst. Atty. Gen., Washington, D.C., George M. Anderson, U. S. Atty., Bruce H. Johnson, Asst. U. S. Atty., Raleigh, N.C., Charles E. Biblowit, Dept. of Justice, Washington, D.C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER, HALL, PHILLIPS, MURNA-GHAN and SPROUSE, Circuit Judges.

PER CURIAM:

For the reasons set forth in the accompanying four opinions, the issues in this case are decided as follows:

1.   Seven members of the court reverse the judgment of the district court.  They hold that the district court has jurisdiction and that the complaint states a claim for relief under 28 U.S.C. § 2409a.  Two members of the court dissent.

2.   Seven members of the court hold that the 12–year statute of limitations provided by 28 U.S.C. § 2409a(f) applies.  Two members of the court dissent.

3.   Six members of the court hold that the government is vested with indefeasible title.  Three judges dissent.

█   On remand the district court should first determine whether Fulcher's claim is barred by the 12–year statute of limitations.  If it is not, the court should decide the merits of Fulcher's claim.  In this connection, the court must ascertain whether Fulcher was properly made a defendant to the condemnation proceedings.  If he was not properly impleaded, the court should determine whether Fulcher or Wahab was the owner of the condemned land.

█   If Fulcher prevails on the merits, the court should award him just compensation.  Because a majority of the court hold that the government acquired fee simple title pursuant to 40 U.S.C. § 258a, compensation should be determined by ascertaining the value of the property on the date the declaration of taking was filed.  Fulcher should also be awarded interest from that date.

BUTZNER, Circuit Judge, with whom HAYNSWORTH, Chief Judge, and WINTER, and SPROUSE, Circuit Judges, join:

Arthur J. Fulcher appeals from an order of the district court dismissing his action against the United States in which he sought to quiet title to property which had been condemned and made part of the Cape Hatteras National Park.  The sole issue is whether Fulcher can maintain his action under 28 U.S.C. § 2409a which authorizes quiet title suits against the government in district courts.  The district court held that

Fulcher could not divest the government of its title.  It intimated that his only remedy was an action for compensation—presumably in the Court of Claims.  Accordingly, it dismissed the action under Rule 12(b)(6) for failure to state a claim.  We agree with the district court that Fulcher cannot obtain title to the property or its possession.  We conclude, however, that he can maintain this action.  If he is not barred by the statute of limitations and if he prevails on the merits of his claim, he will be entitled to compensation.  We therefore vacate the order of dismissal and remand the case for further proceedings.[1]

I

For the purpose of this appeal, the following facts are accepted as true.  On March 29, 1937, O. C. Fulcher conveyed the property in question to A. J. Fulcher, the claimant's father, who promptly recorded his deed.  In July, 1947, O. C. Fulcher again conveyed the property, this time to R. S. Wahab, who also recorded his deed.

The government acquired the property for the Cape Hatteras National Park by filing a declaration of taking and depositing the estimated compensation in court pursuant to 40 U.S.C. § 258a on March 17, 1959.  A. J. Fulcher and his heirs were not named defendants in these proceedings.  Although notice impleading all unknown owners was published in a local paper, Arthur J. Fulcher, living in California, did not receive actual notice of the proceedings and entered no appearance.  Wahab, a named defendant in the condemnation proceedings, was adjudged to be the owner of the Fulcher tract and awarded $18,825.40 compensation.

At some unspecified later date, Fulcher discovered that the property had been condemned.  Claiming title superior to Wahab and therefore superior to the government, he brought this action in 1977.  Relying on *United States v. Chatham*, 323 F.2d 95 (4th

---

1.   A divided panel of the court affirmed the district court's judgment.  *Fulcher v. United*

States, 604 F.2d 295 (4th Cir. 1979).  The appeal was reheard en banc.

Cir. 1963),[2] he contends that the condemnation proceeding did not vest title in the government because notice of the proceeding was inadequate. The government answered and moved to dismiss the complaint on the ground that it could not be divested of title to the property which it had acquired in the condemnation proceedings.[3] The district court, distinguishing *Chatham*, granted the government's motion.

## II

We agree with the district court that *Chatham* does not control this case. In *Chatham* the government named as defendants persons who were complete strangers to the land. Here, in contrast, when the government commenced the condemnation proceeding, it named as a defendant the person who ostensibly held title to the land as shown by the last deed of record. In this respect the government satisfied the requirements of Rule 71A(c)(2), which provides in part: "Upon the commencement of the action, the plaintiff need join as defendants only the persons having or claiming an interest in the property whose names are then known . . . ."

We therefore agree with the district court that the condemnation of the property pursuant to § 258a and Rule 71A(c)(2) vested an indefeasible title in the government. This is manifest from the statute. It provides that on filing the declaration of taking and the deposit of the estimated compensation, "title to the said lands in fee simple absolute . . . shall vest in the United States." The condemnation is a proceeding in rem brought against the land itself. It extinguishes all previous rights and gives "title to the United States good against the world." *Norman Lumber Co. v. United States*, 223 F.2d 868, 870 (4th Cir. 1955).[4]

## III

Recognition of the government's title does not deprive the former owner of the land of his right to just compensation.[5] *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Walker v. Hutchinson City*, 352 U.S. 112, 117, 122, 77 S.Ct. 200, 203, 205, 1 L.Ed.2d 178 (1956). The owner's right is founded on the due process and just compensation clauses of the fifth amendment. Section 258a and Rule 71A(c)(2) implement these constitutional guarantees. Section 258a provides that upon the filing of the declaration of taking and the deposit of the estimated compensation "the right to just compensation for the [property] shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein . . . ." The Rule provides that prior to any hearing involving compensation the government must add as defendants all persons "whose names can be ascertained by a reasonably diligent search of the records . . . ." The Rule next directs that "[a]ll others," that is those persons whose names could not be ascertained, "may be made defendants under the designation of 'Unknown Owners.' "

Payment to the wrong claimant does not divest the government of the property it acquired in the in rem condemnation proceeding; nor does it divest the true owner of his right to compensation which by the

---

2. In *Chatham* we held that the condemnation proceedings did not affect the landowner's title or possessory rights because the government wholly failed to comply with essential provisions of the condemnation statute dealing with notice and description of the land and it did not assert its right to possession for more than seven years after the proceedings were instituted.

3. The government also pled the 12–year statute of limitations, § 2409a(f). This issue is not a subject of this appeal.

4. This general principle is subject to an exception which is not an issue in this case: a landowner can defeat title acquired by condemnation if his property was not taken for an authorized purpose. *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); 6A Nichols, Eminent Domain, § 27.25 (3d ed. 1979).

5. In his complaint Fulcher sought possession of "the property in accordance with § 2409a(b)." Although the complaint does not ask for compensation, this omission does not preclude such relief. Rule 54(c).

terms of the statute similarly vested. For the purpose of this appeal, the government acknowledges these principles, but it contends that Fulcher's right to compensation, if any, can be vindicated only by an action for damages in the Court of Claims under the Tucker Act. Although the government's contention is supported by precedent,[6] we believe that the enactment of 28 U.S.C. § 2409a in 1972 makes it no longer viable.

## IV

Enactment of the Tucker Act [28 U.S.C. §§ 1346 and 1491] in 1887 waived sovereign immunity with respect to a landowner's claim based on the fifth amendment for the government's taking of his property without payment of just compensation. The landowner's remedy was limited to monetary damages and title was confirmed in the government even though formal condemnation proceedings had not been instituted. *See United States v. Dow*, 357 U.S. 17, 21, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958). However, if condemnation proceedings were instituted and the government fully complied with the statute under which it proceeded, it was absolved from liability to the rightful owner when the condemnation court mistakenly paid another claim-

ant. *United States v. Dunnington*, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996 (1892). The landowner's remedy, if he were named as a defendant, was by appeal.

The injustice of denying compensation to an unnamed landowner who had no knowledge of the condemnation proceedings was addressed in 1952 by Rule 71A(c)(2). In addition to the obligation to comply with the condemnation statute, the government is required by the Rule to take reasonable steps to ascertain the true owner; only those persons not identified in this manner can be impleaded as unknown. The Rule preserves the landowner's right to compensation, but not to possession of the property, if the government has failed to comply with it.[7] Condemnation Procedure—A New Federal Rule, 4 Stanford L.Rev. 266, 269 (1952). *See generally* 6A Nichols, Eminent Domain, § 29.1 (3d ed. 1979); 12 Wright & Miller, Federal Practice and Procedure: Civil § 3045 (1973). The Rule alleviates the admitted hardship of *Dunnington*.[8]

## V

In 1972 the Congress, again waiving sovereign immunity, enacted 28 U.S.C. § 2409a[9] to allow the United States to be

---

**6.** *See, e. g., Screven v. United States*, 207 F.2d 740 (5th Cir. 1953); *Phillips v. United States*, 151 F.2d 645 (7th Cir. 1945); *United States v. Certain Parcels of Land*, 40 F.Supp. 436 (D.Md. 1941).

**7.** This issue was raised but not decided in *In re Davis*, 215 Ct.Cl. 1026 (1978).

**8.** In *Dunnington*, 146 U.S. at 353–54, 13 S.Ct. at 84, the Court acknowledged: "The case is doubtless a hardship for the claimants, but it would be a still greater hardship if the government, *without fault upon its part*, were obliged to pay the value of this lot a second time." [emphasis added]

**9.** Act of October 25, 1972, Pub.L. No. 92–562, 86 Stat. 1176 (codified at 28 U.S.C. §§ 1346(f), 1402(d), 2409a).

Section 2409a provides in part:
(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to

trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections 1346 [concurrent jurisdiction of district courts and Court of Claims], 1347 [partition suits], 1491 [general jurisdiction of Court of Claims], or 2410 [actions affecting property on which United States has a lien] of this title . . . .

(b) The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such election the district court in the same action shall determine to be just compensation for such possession or control.

In addition, the statute excludes actions concerning tax liens and adjudication of water

made a party in actions in district courts to quiet title to lands in which the government claims an interest. At the same time it amended the Tucker Act by providing in 28 U.S.C. § 1346(f):

"The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

Congress also amended 28 U.S.C. § 1402 by adding subsection (d) to provide that venue for actions brought under § 2409a shall be in the district court of the district where the property is located.

The legislative history discloses that initially the Department of Justice opposed waiver of sovereign immunity in actions to quiet title. Subsequently, however, the Department submitted the draft of a bill which, with few modifications, was enacted. For this reason much of the legislative history is derived from the Attorney General's comments on his proposal.[10] The Attorney General explained that actions to quiet title contemplated by the draft were broader than those allowed under English bills *quia timet*. The draft was intended to authorize suits even when the United States held possession.[11]

Although the legislative history makes no reference to the situation of a landowner who was not named as a defendant in formal condemnation proceedings, it discusses claims under the Tucker Act for compensation when the government has taken possession without condemnation. Referring to this situation, the Attorney General wrote:

The procedure [provided in the Department's draft] preserves the Tucker Act method for acquisition of property by the Government, as it preserves the concomitant right of the former owner to receive just compensation. A difference from the remedy provided by 28 U.S.C. 1346(a)(2) [the Tucker Act], however, is that the district courts would have jurisdiction without regard to any jurisdictional amount. Where the subject matter of the litigation is real property, it appears equitable that suit be authorized in a court near the situs of the property.[12]

The original bill contained a six–year statute of limitations which conformed with the Tucker Act. 28 U.S.C. § 2501. Upon recommendation of the Attorney General this was extended to 12 years which he considered adequate to prevent litigation of stale claims.[13]

---

rights. It also prescribes the contents of the complaint, subsection (c); abates the action if the United States disclaims any interest in the property, subsection (d); provides for trial by the court without a jury, subsection (e); establishes a 12–year statute of limitations, subsection (f); and prohibits suits based on adverse possession, subsection (g).

**10.** S.Rep. No. 575, 92d Cong., 1st Sess. 5–7 (1971); H.R.Rep. No. 1559, 92d Cong., 2d Sess. 8–10, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4547, 4554–55. *See also* Dispute of Title on Public Lands: Hearing on S. 216, S. 579, S. 721 before the Subcomm. on Public Lands of the Senate Comm. on Interior and Insular Affairs, 92d Cong., 1st Sess. (1971).

**11.** *See Prater v. United States,* 612 F.2d 157, 159 (5th Cir. 1980).

**12.** S.Rep. No. 575, 92d Cong., 1st Sess. 6 (1971); H.R.Rep. No. 1559, 92d Cong., 2d Sess. 9, *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 4547, 4555.

Without referring to this legislative history, a divided panel of the Court of Claims overruled

a government motion, based on § 2409a and § 1346(f), to dismiss for lack of jurisdiction a suit requesting compensation after the government took possession of the claimant's property. The court held that it retained general jurisdiction over such claims. *Bourgeois v. United States,* 545 F.2d 727 (Ct.Cl.1976).

**13.** In his letter to the House Committee, the Deputy Attorney General stated:

Similarly, we suggest that the statute of limitations be extended from six to twelve years for quiet title actions. This will give claimants to land in which the United States also claims an interest ample time to bring suit without necessitating the United States' having to defend against stale claims.

H.R.Rep. No. 1559, 92d Cong., 2d Sess. 8, *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 4547, 4553.

The 12–year limitation is consistent with the law of most states which have relatively long statutes of limitations for actions involving real property. *See* 7 Powell on Real Property § 1019 (1979).

The legislative history establishes that § 2409a encompasses claims for compensation based on takings by the government without condemnation. Although the history is inconclusive about claims of omitted owners arising out of formal condemnation proceedings, we perceive neither congressional intent nor principled reason for distinguishing between these two types of claims by allowing the former and excluding the latter. Apart from their genesis,[14] both types of cases involve claims that the government has taken the claimant's land without paying for it. Both usually depend on evidence that is peculiarly local, such as title records and appraisals. The trials for both are conducted by a judge without the intervention of a jury. Whether the claim originated before or after a formal statutory condemnation, the measure of compensation is the same. *United States v. Dow*, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). In sum, for both types of cases the Attorney General's observation is appropriate: "Where the subject matter of the litigation is real property, it appears equitable that suit be authorized in a court near the situs of the property." Although the Attorney General listed the types of action that were intended to be excluded from § 2409a, it is significant that he made no reference to the exclusion of claims for compensation arising out of condemnation proceedings.

## VI

Fulcher's claim is in the nature of an equitable lien.[15] It is founded on: (1) the due process and just compensation clauses of the fifth amendment; (2) § 258a which vests the right to just compensation in the former owner of the land when the government files its declaration of taking and makes its deposit of estimated compensation; and (3) Rule 71A(c)(2) which directs the government to add as defendants all persons having an interest in the property whose names can be ascertained by a diligent search of the records. The identifiable

res is the property which the government has condemned. Although the declaration of taking and the deposit vest title of the land in the government pursuant to § 258a, the statute preserves, rather than divests, the former owner's right to compensation. This remnant of the former owner's interest in the property bears the characteristics of an equitable lien when the owner's claim arises from the government's alleged failure to comply with Rule 71A(c)(2) and not from any fault or omission of the former owner. The equitable lien cannot be foreclosed because § 258a vests in the government an indefeasible title. Nevertheless, it can be discharged by payment of just compensation to the former owner. The remedy does not alter the characteristics of the equitable lien, and it provides sufficient basis for the maintenance of a suit to quiet title.

Section 2409a(b) provides that if the decree is adverse to the government, it may elect to retain possession of the property. In that event the district court is authorized in the same action to ascertain just compensation for the claimant. This section of the statute is appropriate for claims where the government has taken possession without formal condemnation proceedings. Then, although the government cannot be dispossessed by the claimant without its consent, legal title does not vest in the government until compensation is paid. *United States v. Dow*, 357 U.S. 17, 21–22, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958).

When, however, the government has acquired title by condemnation proceedings pursuant to § 258a, title vests indefeasibly in the government. We believe that § 2409a must be read in conjunction with § 258a. These statutes must be given "the most harmonious, comprehensive meaning possible." *See Clark v. Uebersee Finanz–Korp.*, 332 U.S. 480, 489, 68 S.Ct. 174, 178, 92 L.Ed. 88 (1947). Consequently, when a suit to quiet title discloses that the govern-

---

14. See *United States v. Clarke*, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).

15. An equitable lien is created when an equitable claim attaches to an identifiable res. *See Spring Construction Co. v. Harris*, 562 F.2d 933, 937 (4th Cir. 1977).

ment has acquired title pursuant to § 258a, the district court cannot enter a decree divesting the government of title or possession.[16] Its remedy is limited to the alternative relief provided in § 2409a(b), the award of just compensation by discharging the equitable lien.[17] In this respect the district court's function is essentially identical to awarding compensation in the situation where the government elects to retain possession which it took without formal condemnation proceedings.[18]

Before the enactment of § 2409a, a district court would have had concurrent jurisdiction with the Court of Claims over a claim for compensation similar to Fulcher's if the amount in controversy did not exceed $10,000. 28 U.S.C. § 1346(a)(2). By adding § 1346(f) in 1972, Congress removed the monetary jurisdictional limitation and placed exclusive original jurisdiction of civil actions under § 2409a in the district courts. A similar provision was not added to § 1491 which defines the general jurisdiction of the Court of Claims under the Tucker Act. However, reading § 1491 in harmony with § 1346(f) we find it unlikely that Congress intended to confer on the district courts exclusive original jurisdiction without regard to the amount in controversy while

leaving exclusive jurisdiction in the Court of Claims for claims in excess of $10,000. Settled principles of statutory construction require us to give these sections non–contradictory interpretations. *United States v. American Trucking Assoc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).[19]

Illuminating commentary on the genesis of § 2409a is found in Steadman, Land Title Disputes, 1972 Duke L.J. 15, 77. There, speaking of the allocation of jurisdiction between district courts and the Court of Claims, the commentator observed:

> As to which federal court should be given jurisdiction, the district court in which the property is located appears clearly to be the appropriate forum. Both in terms of familiarity with local law and with accessability to practitioners, the district court is preferable to the other logical choice, the Court of Claims, which has been characterized as a "distant and unfamiliar tribunal, and one more expensive and time–consuming than a local federal district judge."

This observation, which is consistent with the legislative history of § 2409a, is applicable to a claim such as Fulcher's.[20]

---

**16.** This case presents no occasion for considering what deviations from the requirements of § 258a would justify the foreclosure of an equitable lien and put the government to its election under § 2409a(b).

**17.** *But see United States v. 88.28 Acres of Land*, 608 F.2d 708 (7th Cir. 1979). After the government suggested that a party omitted from a condemnation proceeding could bring suit under § 2409a, the court said in dictum that if the claimant were successful, the government would have to elect under § 2409a(b) to either return the property or condemn it again.

**18.** Compensation is determined as of the date the government took possession without statutory proceedings. *United States v. Dow*, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). When the government proceeds under § 258a, the critical time for determining condemnation is the date the declaration of taking is filed and the deposit made. *See United States v. Clarke*, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).

**19.** The legislative history supports our interpretation of the statute:

"The original proposal would have provided for jurisdiction in the district courts by adding a new section 1347a to title 28. The committee amendment accomplishes the same purpose by adding identical language to section 1346 of that title as a new subsection (f)." H.R.Rep. No. 1559, 92d Cong., 2d Sess. 4, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4547, 4550.

If Congress had conferred original exclusive jurisdiction on the district courts through § 1347a, there would have been no residual jurisdiction in the Court of Claims. The legislative history indicates that this was still the intended result, even though the provision was added to § 1346 and no similar provision was added to § 1491.

**20.** In *California v. Arizona*, 440 U.S. 59, 99 S.Ct. 919, 59 L.Ed.2d 144 (1979), the Supreme Court held that § 2409a does not affect its jurisdiction over suits to quiet title between states. In reaching this conclusion, it noted that the grant of exclusive original jurisdiction to the district courts in § 1346(f) eliminated any

In summary, we reject the government's contention that Fulcher must pursue his claim in the Court of Claims.[21] The district court cannot divest the government of title or grant possession to Fulcher. Instead, pursuant to the alternative remedy provided in § 2409a(b), it can award him just compensation with interest [22] if his claim is not barred by the statute of limitations and he prevails on the merits.

The district court's judgment is vacated, and this case is remanded for further proceedings consistent with this opinion. Fulcher shall recover his costs.

JAMES DICKSON PHILLIPS, Circuit Judge, with whom DONALD RUSSELL and WIDENER, Circuit Judges, join:

I agree with Judge Butzner's excellent opinion (hereafter "lead opinion") on the basic point that Fulcher's complaint sufficiently stated a claim for relief under 28 U.S.C. § 2409a, and that in consequence the district court erred in dismissing it under Fed.R.Civ.P. 12(b)(6).[1] My agreement extends to much of that opinion's reasoning leading to its ultimate conclusion that, notwithstanding the consummated § 258a condemnation proceeding, Fulcher may have retained rights deriving from a property interest in the condemned land that could properly be asserted in the "quiet title" action authorized by § 2409a.

I part company at the point the lead opinion finds it necessary to· characterize Fulcher's action as one to enforce a "nonforecloseable equitable lien" for compensation in order to fit it into the "quiet title" category. In my view this skillful expansion of the statute's plain meaning is not necessary to find Fulcher's claim well stated under § 2409a. Differing with the lead opinion on the vulnerability of the § 258a condemnation decree to collateral attack for want of adequate notice, I would hold that Fulcher has sufficiently stated a classic "quiet title" claim: that he owns land, that his ownership is disputed by the government in possession,[2] and that this constitutes a cloud on his title justifying the specific relief he prayed—removal of the cloud, thus quieting his title.

The crux of my disagreement lies in the perception reflected in the lead opinion and shared by a majority of the court, that, whatever the deficiencies of actual or prescribed notice procedures employed in the § 258a condemnation proceeding, the proper filing of the declaration of taking and deposit of estimated compensation under that statute effectively cut off all preexisting property interests, including of course Fulcher's, so as necessarily to preclude any subsequent collateral assertion of those very property interests in a quiet title action.[3] On this view, any deficiencies in the

possibility of state court jurisdiction. The Court had no occasion to address the allocation of jurisdiction between the district courts and the Court of Claims.

**21.** Lacking jurisdiction over the Court of Claims, we express no view on whether that court would have had jurisdiction had Fulcher elected to bring this action there. We hold only that he can bring it in the district court.

**22.** *See* 40 U.S.C. § 258a; *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933).

**1.** The lead opinion finds the claim supportable against a Rule 12(b)(6) motion both in the possibly "jurisdictional" sense that an aggrieved condemnee's quiet title claim is included with other quiet title actions in the exclusive jurisdictional grant of 28 U.S.C. § 2409a and 1346(f); and in the more specific sense that on the merits the particular claim by Fulcher was

well-stated. I agree as to both, though on different grounds as to the latter.

**2.** As the lead opinion rightly points out, this element broadens the classic claim under the bill *quia timet* which did not lie against a defendant in possession.

**3.** All opinions sharing this perception emphasize that it is the result literally dictated by § 258a's provision that upon the declaration and deposit "title . . . in fee simple absolute . . . shall vest in the United States of America . . . ."

It is of course commonplace for statutes to assert in unconditional terms a particular result or entitlement upon the establishment of a statutory right; but all are written on the unarticulated assumption that the final judgment or decree embodying the result shall be a valid one, i. e., one rendered by a court with jurisdiction. So too must be understood repeated judi-

procedures that might have deprived Fulcher, or others, of fair notice and an opportunity to be heard in the condemnation proceeding went only to their opportunity thereafter to assert collaterally a right to be justly, if belatedly, compensated for the taking of any provable property interests. This of course stems ultimately from the view that the judicial condemnation proceeding, being one *in rem* –against the property itself–gives rise to a judgment good "against the whole world" in its title–divesting aspect, just so long as the constructive notice provided by general publication, physical seizure, or posting on the property has been given to the "whole (non–specific as to persons) world."

With all respect, it is my understanding that *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny have long since effectively scuttled the idea that such notice *ipso facto* satisfies due process requirements simply because a proceeding is one traditionally classified as *in rem.* It simply is no longer the law that the existence of *in rem* jurisdiction "over the property itself" relieves of any necessity to give more than fictive notice to persons having interests in the property, in order to extinguish those interests.[4] *Mullane's* central teaching is that *no* judicial proceeding, whatever its traditional classification as *quasi in rem, in rem* or *in personam,* can validly affect the legal relations of interested persons except as those persons have been given, as their process due, that "notice reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an op-

portunity to present their objections." *Id.* at 314, 70 S.Ct. at 657.

There remains only the question whether any special quality of the sovereign's exercise of eminent domain power relieves of *Mullane's* requirements. I think ·not. Whatever the other means by which government may take land under its power of eminent domain (of which more later), one means is by the special judicial proceeding traditionally called "condemnation." *See United States v. Clarke,* 445 U.S. 253, 255, 100 S.Ct. 1127, 1129, 63 L.Ed.2d 373 (1980). The proceeding under § 258a is such a proceeding, one of many authorized by statute. When government formally invokes the judicial process as the means by which it will take property, i. e., when it decides as "petitioner" in the courts to condemn by judicial proceedings, it must surely be held to invoke that process subject to the due process rights announced in *Mullane* for "all interested parties" in those proceedings. There is no reason apparent to me why judicial condemnation proceedings should be thought to lie outside the broad sweep of those *in rem* proceedings for which *Mullane* admittedly announced a new notice dispensation. The two principal post–*Mullane* Supreme Court decisions dealing with notice requirements in condemnation proceedings, *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), and *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), have specifically accepted *Mullane's* applicability to condemnation proceedings though, concededly, only to permit the collateral assertion of compensation claims on the particular facts of the two cases.[5] Again, no rea-

---

cial statements such as that in *Norman Lumber Co. v. United States,* 223 F.2d 868, 870 (4th Cir. 1955), quoted in the lead opinion, that a condemnation decree gives "title to the United States good against the world." Because the unarticulated jurisdictional assumption must underlie all such assertions, they have to be read in the light of evolving jurisdictional doctrine.

4. This point is repeatedly made throughout relevant sections of the recently adopted Restatement (Second) of Judgments (1980). *See, e. g.,* Introductory Note, ch. 2, at 13–15; § 5 com-

ment g at 33; § 9 comments a, b at 68–73 (Tent.Draft No. 5, 1978).

5. In *Walker,* the majority carefully construed the landowner's pleading as seeking only compensation, a construction strongly challenged by Justice Frankfurter in dissent. *Walker v. City of Hutchinson,* 352 U.S. at 118–22, 77 S.Ct. at 203–205, 1 L.Ed.2d 178 (dissenting opinion). In *Schroeder,* as Chief Judge Haynsworth cogently observed in *United States v. Chatham,* 323 F.2d 95, 99 (4th Cir. 1963), the nature of the property interest taken, the right to a particular course of water flow rather than free-

son appears to me why it should be thought that a condemnation court *without* power to cut off claims for just compensation because of constitutionally inadequate notice should nevertheless be thought to have the power, despite the same inadequacy, initially to divest of the very property interests for which the compensation claims are substituted. That–as is frequently noted–judicial condemnation proceedings are typically bifurcated into "taking" and "compensation" stages seems to me of no consequence to the question of the condemning court's judicial jurisdiction to affect the legal relations of interested persons in any way. *See Restatement (Second) of Conflict of Laws,* Introductory Note, ch. 5 (1971). It is the same court–acting in the same proceeding, on the same jurisdictional foundation, affecting by its exercise of judicial power the legal relations of the same persons–whether divesting of title or determining and distributing just compensation. In my judgment–and I confess to a confusion of both primary and secondary authorities on the issue [6]–constitutionally inadequate notice to interested persons in a condemnation proceeding must be held to deprive the condemnation court of jurisdiction finally to exercise either of these aspects of the judicial power invoked by the sovereign when it decides to take its citizens' lands in this way.

The origins of the notion that a merely fictive form of notice in condemnation proceedings may be inadequate to cut off compensation claims yet adequate to cut off title claims are obscure to me. The lead opinion suggests that Fed.R.Civ.P. 71A(c)(2) directly mandates this result in a deliberate effort to relieve landowners from a hardship that would otherwise have been theirs under the continued rule of such pre–*Mullane* cases as *United States v. Dunnington,* 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996 (1892).

With all respect, I think this claims too much for the Rule's intended, as well as for its constitutionally permissible, effect, and that it misperceives the status of *Dunnington's* rule at the time the Civil Rule was adopted in 1951. To say why requires a brief foray into history.

*Dunnington* actually applied a ruthlessly correct rule under its pre–*Mullane* view of due process notice requirements in any proceeding characterized as *in rem.* Because on that view any of the approved fictive forms of notice sufficed to notify "all the world," a resulting *in rem* decree cut off *all* the claims of all the world–to compensation as well as to title. *Dunnington* was then perfectly consistent with the view here advanced that the jurisdictional basis of a condemning court's power is gauged by exactly the same criteria whether it is being exercised to divest of title or to award compensation. Since *Dunnington* and similar cases of that vintage found jurisdiction for either purpose adequately grounded in various fictive forms of notice, it considered the resulting condemnation decree preclusive of any sort of collateral claims by anyone–including actual owners of the land who may have had no notice of the proceedings.

The lead opinion reads in Fed.R.Civ.P. 71A(c)(2) a deliberate effort to relieve landowners who had no notice of formal condemnation proceedings of the harshness of the *Dunnington* rule. The Rule does this, in the lead opinion's view, by imposing a more stringent notice requirement for cutting off compensation claims than did the *Dunnington* rule, while leaving intact *Dunnington's* minimal fictive notice requirement for cutting off title claims. With respect, I suggest that *Mullane,* decided just a year before the Civil Rule's adoption, had already changed the *Dunnington* rule

hold title, made impractical any restoration of the property interest, leaving only a compensation claim capable of collateral assertion. Neither of the cases suggested that the inadequacies of notice that in each exposed the condemning authority to collateral claims for compensation might not also have exposed it to timely claims for quieting of title or restoration of property interests.

**6.** For a dramatic illustration of the confusion, see text and cited cases in 12 Wright & Miller, *Federal Practice and Procedure § 3045.*

at the constitutional level in a way containing no suggestion that notice inadequate to cut off compensation claims in condemnation proceedings might nevertheless suffice to cut off title claims. The Civil Rule itself does not posit such a consequence for the procedure it prescribes. As I think the lead opinion recognizes by its reference to *In re Davis*, 215 Ct.Cl. 1026 (1978), where the issue was raised and not decided, such a substantive effect for Rule 71A(c)(2) has not been authoritatively established by judicial decision. In my view, it could not be, since so construed it would be at odds with *Mullane*. 28 U.S.C. § 2072.

Rather, I suggest that both the Rule and 40 U.S.C. § 258a can be construed and applied in a way perfectly conformable to the view of *Mullane* here advanced. The Civil Rule's provision for staged addition of landowner defendants following a formal taking with only one named accommodates practically to the need in some cases for a summary, ex parte taking of property, and legally, to the principle that in such cases due process rights related to the taking itself may be adequately protected by timely post–seizure notice. *See Restatement (Second) of Judgments*, § 5, comment h at 40 (Tent. Draft No. 5, 1978); *cf. Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In any event the critical concern of the *Mullane* rule is not with formal naming of "parties" but with giving adequate notice to the interested "persons" in traditional *in rem* type proceedings. *See Restatement (Second) of Judgments*, § 9, comment a at 70 (Tent. Draft No. 5, 1978).

In this Circuit, *United States v. Chatham*, 323 F.2d 95 (4th Cir. 1963), relying expressly upon *Mullane*, stands as direct, unshaken authority for the general proposition that notice not meeting *Mullane* standards invalidates a condemnation decree not only to the extent it purports finally to determine and properly to distribute just compensation, but, more fundamentally, to the extent it purports to divest non–notified persons of their interests in the land.[7] A majority of the court here, as did the district court, seeks to distinguish *Chatham* on the basis that the notice procedures there were deficient not only in the means employed (publication) relative to those readily available but in the very description of the property and that in *Chatham* there was no accompanying physical seizure of the land. With all respect, these features do not distinguish the cases in a way dispositive of the issues on this appeal. While it is true that *Chatham* expressly reserved the question "whether the [property claimants] might have been limited to a claim for compensation if the only procedural defect had been the absence of actual notice," *id.* at 100, this can only be read as the court's normal inclination to decide only the case before it. Of critical importance in assessing the true holding in *Chatham* is the fact that the court was primarily concerned with the *relative* inefficacy of the publication device, as against other means demonstrably available, for communicating *any* notice, whether or not its content was adequately informative. *Id.* at 98. Similarly the fact of actual seizure of the land, as that might bear upon the adequacy of notice,[8] does not distinguish the cases in a dispositive way. As the *Mullane* Court pointed out in dictum, physical entry upon land may under some circumstances act as such reinforcement for notice by publication that the two in combination would pass constitutional muster. *Mullane*, 339 U.S. at

7. At least two other Circuits have considered the precedential effect to be accorded *Chatham*. In *United States v. 88.28 Acres of Land*, 608 F.2d 708 (7th Cir. 1979), the Seventh Circuit cited *Chatham* with approval in holding that landowners might be able in a quiet title action under § 2409a successfully to attack a government condemnation title for want of adequate notice. *Id.* at 716. In *United States v. Haddon*, 550 F.2d 677 (1st Cir. 1977), the First Circuit, citing *Chatham*, declined "to decide this case on the broad ground that lack of notice may never be a cause for upsetting title," though indicating that a landowner's remedy for lack of notice "would seem to be limited to damages." *Id.* at 681.

8. A matter distinct from its service as an independent means for "taking" property under eminent domain power.

316, 70 S.Ct. at 658. But whether it will in a particular case must vary with the factual circumstances–contemporaneity of the entry, nature of the seizure, etc.–as these would relate to *Mullane's* ultimate concern with the *relative* utility of such a combined means as compared to any other more efficacious and readily available means of giving actual notice. None of this has yet been developed in the instant case. Indeed it is not apparent from the meager record so far developed whether and when and in what form any act of physical entry upon or seizure of the subject lands may have occurred, nor has any factual inquiry into the practical availability of other means of identifying and notifying the landowner been conducted. *Cf. Chatham,* 323 F.2d at 99. All this may appear in due course in conjunction with Fulcher's attempt to show, as ultimately he must in order successfully to attack the condemnation decree under the views expressed in both the lead opinion and this opinion, that it is invalid for lack of adequate notice to him.[9] But it was error to foreclose this opportunity by holding as a matter of law that the notice given Fulcher, presumably only that supplied by publication coupled with the declaration of taking, constituted constitutionally adequate notice under *Mullane.*

To this point, my differences with the position taken in the lead opinion go only to the nature of the quiet title claim that we both agree has been sufficiently stated so that remand for further proceedings is required. The lead opinion holds that it is merely one to be now justly compensated, through enforcement of an "equitable lien." I would hold instead that it is a colorable claim to have the government's adverse claim of title by condemnation proceedings removed as a cloud on Fulcher's rightful ownership.

Under either view, in order to succeed on the merits, Fulcher must 1) prove his title apart from the government's adverse claim; 2) successfully attack the government's condemnation decree for want of due process notice; 3) prevail over the government's plea of the 12–year statute of limitation. If he succeeds on all this under the lead opinion's analysis, he would be entitled to have the court proceed under § 2409a(b) to determine just compensation as of the time of the "taking" by declaration and deposit. In sum, the government would retain, as unchallengeable in this proceeding, the title acquired at the time of taking and deposit under the § 258a proceeding, but would now pay Fulcher just compensation, determined anew [10] in the § 2409a proceeding, for the property interest he lost by the taking during formal condemnation. I think this a substantially just result in practical terms, but, with deference, not quite the result to which Fulcher is entitled under the constitution and § 2409a if he prevails on the merits.

Upon my view, the proper result if Fulcher were to succeed on the merits is precisely that contemplated by § 2409a(b) when any "quiet title" claimant succeeds in having "the disputed title" determined adversely to the United States: he may nevertheless have to accept just compensation rather than restoration of possession if this is what the government chooses. 28 U.S.C. § 2409a(b). But on my perception of the underlying rights as they will then have been adjudicated, the proper date for determining just compensation would be the date upon which it could then be established that the government "took" the land under its power of eminent domain by the alternative means available to item—physical entry or seizure. This is a result perfectly compatible with the intended operation of § 2409a; with vindication of the landowner's constitutional rights to fair notice as I under-

9. In his quiet title action, Fulcher's collateral attack on the condemnation decree, hence the title derived from it, is an essential element of his claim on the merits. In litigating it, the *Mullane* factual issues of Fulcher's identifiability, the efficacy of the means of notice employed, etc., are of course critical. Such mat-

ters as the state of title records, local customs in making title searches, etc. may be highly relevant.

10. While the lead opinion does not expressly so hold, I assume this is implicit in its decision.

stand them; and with evolved federal condemnation doctrine as recently analyzed by the Supreme Court in *United States v. Clarke.*

As explained in *Clarke,* the sovereign power of eminent domain can be exercised by the federal government in either of two ways: by a formal condemnation proceeding which "require[s] various affirmative action on the part of the condemning authority," or by a "taking by seizure" under which the "condemning authority need only occupy the land in question." *Clarke,* 445 U.S. at 257, 100 S.Ct. at 1130. *See also United States v. Dow,* 357 U.S. 17, 21, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958). When a judicial proceeding is employed, the legal issues that may be raised, including those having to do with the validity of taking and of the procedures mandated by statute or constitution, as well as with compensation, are adjudicated in the condemnation proceeding itself (or possibly in collateral proceedings if the condemnation procedures deprived of adequate notice, *e. g., Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255; *United States v. Chatham,* 323 F.2d 95).

When the power is exercised solely by physical invasion, the legal issues, ordinarily related only to compensation or to the extent of an undisputed physical seizure of some degree, *e. g., Ivanhoe Irrigation District v. McCracken,* 357 U.S. 275, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958), are adjudicable in what has come to be called an "inverse condemnation" action prosecuted by the landowner. In the latter, of course, there can be no questions of entitlement to due process notice as an incident to the prior taking by physical seizure; all the process due in respect of the right to compensation is supplied by the availability of the inverse condemnation cause of action. Whether the power is exercised by judicial proceed-ing or by physical invasion, just compensation is determined by the value of the property at the time of the "taking."

When judicial condemnation is utilized, the taking "generally occurs sometime during the course of the proceeding," *Clarke,* 445 U.S. at 258, 100 S.Ct. at 1130. Under § 258a this is the time of declaration and deposit. 40 U.S.C. § 258a. But when the power is exercised "by physical invasion . . . the usual rule is that the time of the invasion constitutes the act of taking, . . . ." *Clarke,* 445 U.S. at 258, 100 S.Ct. at 1130. *See also United States v. Dow,* 357 U.S. at 22.

The government may of course make a conscious choice between the two means. It may—odd though it seem—deliberately choose "not to condemn land but to bring about a taking by a continuous process of physical events." [11] *Clarke,* 445 U.S. at 256, 100 S.Ct. at 1130 (quoting *United States v. Dickinson,* 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947)). Or it may, willy–nilly, choose both, as it will when either before, during or after a judicial proceeding it makes a physical invasion which, standing apart from the proceeding, would constitute "inverse condemnation." If in the latter event the judicial proceeding goes through to valid final judgment, the time of taking for valuation purposes will be the earlier of the events of effective physical invasion or of prescribed taking under the relevant statutory proceeding. *United States v. Dow,* 357 U.S. at 22, 78 S.Ct. at 1044. But what if a judicial condemnation proceeding is found in a collateral action to be invalid for want of constitutionally adequate notice to constitute a "taking"? If this be determined, the landowner is immediately confronted with the fact that although the taking by formal proceeding is a nullity, that by physical invasion now stands to divest him of his

---

11. While a taking by physical invasion, being completely efficacious to acquire title, might be thought preferable to the administrative difficulties attendant upon formal condemnation proceedings, there are of course overpowering reasons to prefer the latter. Properly conducted, the formal proceeding can, and typically does, dispose of all issues and conclude all persons in a setting chosen by the condemning authority. Taking by physical invasion on the other hand simply exposes the government to continued "inverse condemnation" actions by various claimants proceeding as and when they will.

title just "quieted." This is exactly the situation that might—and presumably will—face the landowner here if he were to succeed in his attack upon the condemnation decree. Though he will have succeeded in removing one "cloud" upon his title, another—this one irremovable by legal action—may immediately be asserted by the government. If this occurs, the landowner is now left with only a claim for compensation for "inverse condemnation." While the practical result would be substantially identical to that achievable under the lead opinion's analysis if the time of taking by declaration and by physical invasion are approximately the same, it could of course be quite different if they were revealed to have been substantially separated in time. *See Clarke,* 445 U.S. at 255, 100 S.Ct. at 1129 (majority opinion); *id.* at 259, 100 S.Ct. at 1131 (dissenting opinion).

Perhaps somewhat fortuitously, § 2409a seems perfectly adapted to this situation. It provides the jurisdictional basis for a landowner's action in the district court of the district wherein the land lies to quiet his title against the adverse claim of the government rested, so far as the landowner is entitled to assume, on its title acquired in the formal condemnation proceeding. If he succeeds in his collateral attack upon the judicial decree, hence upon the title it supports, § 2409a(b) nevertheless permits the government to "elect" in the same action to "retain possession" upon payment of just compensation to be determined in the action. In effect, this permits the government, following a successful attack upon its title by "condemnation" to assert a back—up title by virtue of a physical taking,[12] thus relegating the landowner to a claim for compensation based upon "inverse condemnation" in the same action. Though the landowner's victory may then be Pyrrhic in terms of the award realizable, § 2409a will have permitted him to wage the battle on his home ground instead of the "distant forum" provided by the Tucker Act, thus carrying out an important purpose of the jurisdictional grant.

For the reasons here advanced, I would vacate and remand with directions to proceed in accordance with the views here expressed.[13]

**12.** Of course, under the specific terms of § 2409a(b) the government could concede the invalidity of its condemnation decree and immediately fall back on its title acquired by seizure. In my view, of course, this would not affect the § 2409a court's quiet title jurisdiction grounded in the landowner's well—stated, colorable claim of title.

**13.** Because the views expressed in this opinion would result in continued exposure of condemnation titles to collateral attacks for inadequacy of notice, it may be appropriate to observe that in practical terms this would pose no real threat to the stability of government land titles. The basic reason is of course the government's ability to fall back upon its fail—safe device of taking by physical invasion in any case where its condemnation title is invalidated on collateral attack. Even if in an occasional case there has been no physical taking prior to the launching of collateral attack on a condemnation title, one is soon arranged, and could presumably be accomplished even during the pendency of a § 2409a action. Secondly, the means of protection against successful collateral attack are readily at hand. They lie in simple observance of the notice requirements of· constitution and rule—an observance that imposes no burden upon government that ordinary prudence and elementary professional responsibility should not be thought already to impose upon government lawyers attending to the government's condemnation business. It must be remembered that *Mullane* and its condemnation case progeny do not require actual notice in order to preclude claimants. The requirement is only that "[t]he means employed must be such as one desirous of actually informing the absentee *might reasonably adopt to accomplish it*"; and the method actually employed may always "be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657. That to comply with the constitutional requirement of *Mullane* and subsumed Civil Rule 71A(c)(2) may require reasonable preliminary *efforts to identify the specific persons* to be notified in appropriate ways is obvious; but here again the requirement is not a burdensome one. Indeed, no one of the controlling condemnation cases has suggested that any steps beyond those that the most modestly endowed and motivated title lawyer would consider elementary and routine need be taken: *e. g.,* physical inspection of the premises, examination of land records conformably to local

K. K. HALL, Circuit Judge, concurring in part and dissenting in part:

I would decide the case in accordance with the previous opinion of the majority of the panel found in 604 F.2d 295 (4th Cir. 1979).

MURNAGHAN, Circuit Judge, dissenting:

Judge Hall's carefully reasoned and elegantly phrased dissent commands my complete concurrence. I add a few words only so not, by silence, to be deemed to have accepted certain aspects of the majority opinion of Judge Butzner and the concurring opinion of Judge Phillips.

With respect to Judge Phillips, I suggest that he places too great reliance on the fact that there is an *in rem* aspect to a condemnation proceeding. It is not the *in rem* character on which I rely for my conclusion that there is no "disputed title to real property in which the United States claims an interest," and hence no jurisdictional foundation under 28 U.S.C. § 2409a for proceeding in the United States District Court, instead of in the Court of Claims. Rather, it is the consideration that, by filing a declaration of taking, the United States under 40 U.S.C. § 258a has obligated itself (a) without right of rescission to take the property and (b) to pay full value amounting to just compensation.[1]

It has been recognized by the Supreme Court that, where a seizure of property has been wrongful, as in the case of a vesting by the Alien Property Custodian of non–enemy property, the Act's constitutionality depends on its provision for repayment of just compensation where the Custodian has liquidated the vested assets. *Guessefeldt v. McGrath*, 342 U.S. 308, 317–18, 72 S.Ct. 338, 343–344, 96 L.Ed. 342 (1952). The ruling, I submit, accepts the legal equality of just compensation with the property itself, and renders the Government's title good where, as here, just compensation is guaranteed, even though the original seizure was wrongful.

The cases relied on by Judge Phillips in his arguments as to why inadequacy of notice interrupts or creates a dispute with respect to the Government's title involve private persons not the Government, or

---

customs in title searches, possibly an inspection of collateral records such as tax lists. The controlling statutes and civil rules, applied in conformity with the view here expressed, adequately protect the interests of the government in effecting summary occupation where necessary prior to conducting the full inquiry into ownership necessary to give the notice required by *Mullane* to cut off the claims "of all interested persons" prior to entry of final decree.

1. *Cf. United States v. Sunset Cemetery Co.*, 132 F.2d 163, 164 (7th Cir. 1942) ("Upon the filing of the declaration of taking, title to the lands in fee simple vests in the United States and the right to just compensation for the same in the persons entitled thereto . . ., Section 258a, *and that action irrevocably commits the United States to payment of the ultimate award. . . .* Consequently *the proceeding may not be subsequently abandoned* so as to deprive the owner whose property has been taken of his constitutional right to have the damages assessed and paid in money." (Emphasis supplied)); *Chandler v. United States*, 372 F.2d 276, 278–9 (10th Cir. 1967) ("The law is clear that in eminent domain cases the government, after filing a declaration of taking and depositing in court the estimated just compensation, cannot change its mind and divest itself of the title taken."); with *United States v.*

*One Parcel of Land,* 131 F.Supp. 443, 445–6 (D.D.C.1955) ("Where no declaration of taking has been filed, no judgment entered and no payment or deposit made of an award of just compensation, title has not vested in the United States and it is free to abandon the taking or reduce the estate at any time, even if it has taken possession, and be liable only for actual use and occupancy without restoration damages. . . . In this type of proceeding the Government has the opportunity of determining the price of a property so that it may decide whether it exceeds the expected benefit or is more than it is prepared to pay, . . . . The Government can then decide whether to accept or refuse at the price fixed."). *United States v. Chatham*, 323 F.2d 95 (4th Cir. 1963) is not a case which has any pertinence to the issue now confronting us. Quite apart from the far more outrageous inadequacy of notice present in that case, from all that appears, the United States was claiming title on the basis of a final judgment of condemnation, not effective to divest title from the private owner until "complete," rather than on the basis of a declaration of taking, where, upon filing, title is fully, immediately, and indefeasibly vested in the Government.

they involve claims for money only, for just compensation, not assertions of a defect in title. The cases involving private persons have to do with inadequacy of notice in circumstances in which the party not given notice stands to lose his property interest altogether. Here, however, the consequences are by no means so drastic. The party deprived of notice still has his claim for just compensation, i. e., a property interest of an equivalent value in money to the value of the real estate itself.

As to the just compensation claim against the Government, its position uniquely differentiates it from any private party. Its status as the Government and its control of the money supply permit it to make and to fulfill a fundamental promise to pay just compensation which no private party, however well off, can hope to equal.

Furthermore, with respect to Judge Phillips' concurring opinion, I diffidently suggest that we are concerned here only with ascertaining the intent of Congress not with determining a constitutional right. Even if he were right, that, constitutionally, despite the clear expression of 40 U.S.C. § 258a to the contrary, title could not be fully divested by a proceeding defective as to notice, although a declaration of taking has been filed, nevertheless, Congress obviously did not view matters that way when it enacted 28 U.S.C. § 2409a. On the contrary, Congress was manifestly proceeding on the belief that, following a declaration of taking, all title dispute was over, with ownership indefeasibly vested in the United States, and only the question of what would amount to just compensation open for discussion.[2]

Regardless of the rights or wrongs of Judge Phillips' reasoning, therefore, it is clear that Congress did not believe there could be a disputed title by reason of an inadequacy of notice or other defect in the condemnation proceeding, so long as a declaration of taking had been filed obligating the Government to complete acquisition and compelling the Government to pay just compensation. It is a patently true proposition that Congress had a full right to make the type of proceeding the plaintiff has sought to institute one cognizable solely in the Court of Claims. The question is solely where Congress has, in fact, chosen to place jurisdiction. It has opted for the Court of Claims and not for the several United States District Courts (at least where the claim, as here, exceeds $10,000) with respect to the compensation question by its clear retention under 28 U.S.C. § 2409a of jurisdiction in the Court of Claims of compensation questions. The statute states: "This section does not apply . . . to or affect actions which may be or could have been brought under sections 1346, . . . 1491,[3] or . . . ." Hence, even if Judge Phillips were right and a "disputed title" existed on his analysis it was not *such* a "disputed title" that Congress had in mind when it enacted 28 U.S.C. § 2409a. The disputed title which Judge Phillips asserts would be an altogether unintended "disputed title." Congress fully intended that only the compensation issue would be open, *see United States v. Haddon*, 550 F.2d 677, 680–1, 682 (1st Cir. 1977), and for reasons so compellingly expressed by Judge Hall Congress made evident its determination, where the dispute was restricted to compensation issues, to waive sovereignty only to the extent of permitting suit in the Court of Claims.

With respect to Judge Butzner's approach, my dissent concerns the meaning he seeks to assign to the word "lien." I understand it to constitute an interest in property giving the holder some identifiable rights in

---

2. There could in some cases, of course, be a justiciable question as to whether the taking was for a public purpose. *Catlin v. United States*, 324 U.S. 229, 241, 65 S.Ct. 631, 637, 89 L.Ed. 911 (1945). However, that is not an issue here since inclusion in the Cape Hatteras National Seashore, an undoubted public purpose, is conceded by the claimant.

3. 28 U.S.C. § 1491: "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, . . . . ."

the property, itself. However, merely saying that one has a lien does not make it so if there is not a basis for it, and the fact that title is indisputably vested in the Government following a declaration of taking under 40 U.S.C. § 258a cuts away all foundation for an argument that there is any basis under which the private party may claim an "interest" in the property.

It is, of course, dangerous to ascribe unarticulated motivations to other members of the Court, and especially to Judge Butzner for whose acumen and depth of legal learning I have a great respect dating back over a number of years. Nevertheless, I sense a desire to achieve an apparently fairer result by permitting the kind of suit here involved to proceed in the district court on the claimant's home grounds, rather than requiring

that he go to Washington and the Court of Claims.[4] Were I to form an opinion as to wisdom, I suspect that Judge Butzner and I would find ourselves in total agreement. However, I purposely refrain from doing so, since it emphatically, under the doctrine of separation of powers, is not a judge's function to decide what is wiser and to assume the function of Congress by "supplementing" the language of a statute when it says one thing although it would appear more prudent for it to have said another.[5] There is no lien, there is no disputed title, and I respectfully suggest that the claim may be heard only in the Court of Claims.[6]

In my opinion, Judge Hall correctly analyzed the competing factors, and I join in his dissent.

---

**4.** It is not uncommon, of course, for judges to supply inadequacies or omissions in briefs or other submissions by the parties, in order to add certainty and completeness to exposition of the law. But there is a difference of some magnitude between citation of an authority to support a single legal proposition and the construction of an entirely novel rationale, as has been done in the instant case. The rationale was not suggested by the party who will benefit. The Government, who will be the loser, will be faced with a decision against it based on a proposition of law on which it has never had the opportunity to present its side of the matter. The new legal concepts may substantially affect condemnations in all fifty states and create manifold problems at which we cannot even guess.

I submit that, quite apart from my arguments as to why the new use of the word "lien," by which it has been assigned a meaning directly contrary to what it has customarily meant heretofore, such a drastic step should not have been taken without allowing the Government at the very least some opportunity to defend itself, and to point out why the theory, on close examination, may not withstand close scrutiny.

It is extraordinary to see a result in which (1) a plaintiff brings action asserting a basis for removing a cloud "from plaintiff's title," (2) the majority agrees that plaintiff has no title, and can acquire none, (3) yet have the majority argue that a suit by plaintiff to quiet the *defendant's* title may proceed on the theory that an asserted right of the plaintiff to a money judgment constitutes, somehow, an equitable lien clouding the defendant's title. It is novel, indeed, to construe a statute purporting to create a right in the plaintiff, insofar as quieting title is concerned, as extending to a suit in no way designed to quiet *plaintiff's* title.

**5.** Cf. Chief Justice Burger concurring in *Bifulco v. United States*, 447 U.S. ——, ——, 100 S.Ct. 2247, 2259, 65 L.Ed.2d 205 (1980):

Rather, the question before the Court is substantially more limited: what do the words of the statute mean? Of course, we must try to discern the intent of Congress. But we perform that task by beginning with the ordinary meaning of the language of the statute. Our compass is not to read a statute to reach what we perceive–or even what we think a reasonable person should perceive–is a "sensible result"; Congress must be taken at its word unless we are to assume the role of statute revisors.

**6.** Since the claim involves more than $10,000, there is no question of concurrent district court jurisdiction. We have no occasion to address whether for a claim of $10,000 or less jurisdiction could under 28 U.S.C. § 1346(a) be entertained by the district court.

---

The plaintiff's claim was altogether on a theory rejected by the majority, namely: "that Plaintiff is the owner and is seized in fee simple of . . . that property. . . ." Brief of Appellant, p. 4. "Plaintiff is still seized of fee simple interest in that property. . . ." *Id.* p. 13. "Wherefore plaintiff prays judgment that the cloud of said adverse claim of the defendant be removed from his said title to said property and that the plaintiff be declared the owner in fee simple to said property, free from the claim of the defendant, and that the plaintiff is entitled to possession of said property." Complaint, p. 3. Nowhere in his submissions or in his oral argument was the lien theory ever even alluded to. The Government, therefore, had absolutely no occasion–indeed no true opportunity–to address it.