PULASKI COUNTY *v.* COMMERCIAL NATIONAL BANK.

4-7898                                    194 S. W. 2d 883

Opinion delivered May 20, 1946.

Rehearing denied June 17, 1946.

*John M. Rose,* for appellant.

*E. R. Parham, Wallace Townsend, Donham, Fulk & Mehaffy, Moore, Burrow, Chowning & Hall* and *Henderson, Meek, Catlett & Henderson,* for appellee.

Robins, J. Appellants, County of Pulaski, City of Little Rock, and Little Rock Special School District, by their attorney, Mr. John M. Rose, complained to the assessor of Pulaski county that appellees, four banks domiciled in Little Rock and one bank in North Little Rock, in listing their property for assessment, used an improper formula by which to compute the value of the banks' shares of stock, resulting in too low an assessed valuation thereon. The assessor ignored the protest of

appellants and assessed the shares of stock of appellees according to the calculations submitted by each of them, respectively.

The said appellants and Mr. Rose, as a property owner, made application to the Board of Equalization of Pulaski County for an increase of these allegedly erroneous assessments. The Equalization Board refused to make the requested increases. An appeal to the county court from this action of the board was taken by appellants. The County Court made an order sustaining the action of the Board of Equalization and granted an appeal to the circuit court.

In circuit court appellees filed a motion to dismiss the appeal of appellants on these grounds:

1. That Pulaski county, Little Rock and the school district were not "aggrieved property owners" within the meaning of § 13671 of Pope's Digest and were therefore not entitled to appeal from the action of the Equalization Board.

2. That said section of Pope's Digest did not authorize one property owner to prosecute an appeal from the refusal of the Equalization Board to adjust the assessment of another property owner.

3. That appellant, John M. Rose, was not entitled to prosecute the appeal for the further reason that he failed to show that his (Rose's) property was assessed on the basis (50% of value) that he was seeking to enforce as to the property of appellees.

4. That the petition for appeal failed to show that the stock of appellees was assessed "at a level lower" than that of other taxpayers.

5. That if § 13671 of Pope's Digest may be interpreted as giving one taxpayer the right to appeal from the action of the Board of Equalization in refusing to increase the assessment of another taxpayer it is ineffective for this purpose because it fails to provide for notice to the property owner whose assessment is questioned.

The circuit court sustained the motion on all of the grounds set forth above, and to reverse judgment dismissing their appeal from the order of the county court appellants have appealed to this court.

Section 13671 of Pope's Digest (§ 30 of Act 172, approved March 22, 1929) is as follows: *"Property owner may apply to board for adjustment of assessment.* Any property owner may, by petition or letter, apply to the Equalization Board for the adjustment of the assessment of his own property or that of another person as assessed by the county assessor, provided, all applications shall be made to the board on or before the third Monday in August. Any property owner may, in person, by agent, petition or letter, apply to the Equalization Board for the adjustment of the assessment of his own property or that of another person as equalized by the Equalization Board, provided, all applications shall be made to and considered by the board on or before the first Saturday next preceding the third Monday in September. The assessor or any property owner who may feel aggrieved at the action of the Equalization Board may appeal from the action of said board to the county court by filing petition of appeal with the clerk of the county court, for which, except on appeals by the assessor, one ($1.00) dollar shall be paid as cost to said clerk, who shall summon the members of the board and issue such process as said assessor, board or county judge may request for witnesses and evidences of amount and value of property; provided, no appeal to the county court shall be taken except by those who have first exhausted their remedy before the Equalization Board, excepting however, all cases where the petitioner shall have had no opportunity to appear before said board. Provided, further, such appeals must be filed on or before the second Monday in October of each year and shall have preference over all matters in said court, and shall be heard and order made on or before the first Monday in November; and provided further, that no reduction shall be allowed except on evidence corroborative of that of the owner. It shall be the duty of the

prosecuting attorney or his deputy when called upon by the county assessor, a member of the Equalization Board or the county court, to represent the county and state in the prosecution of all appeals before the county and circuit courts.''

When all the language of this section is given effect, it must be held that it evinced a legislative intention to permit one property owner to protest to the Equalization Board against a conceived insufficiency in the amount of the assessment of another taxpayer and to appeal to the county court from an unfavorable disposition of his protest by the board; and on appeal to the county court that tribunal has the power, under this law, to change assessments as made by the assessor and as approved by the Equalization Board by increasing or decreasing the amount of same. But the statute makes no provision whatever for any sort of notice to the property owner whose assessment is thus attacked.

The law prescribes that all property must be assessed at a certain time by the assessor, and therefore every property owner must take notice of this step in fixing the tax lien on his property; but the situation is manifestly different as to the making of an increase in the property owner's assessment by the county court on appeal from the Board of Equalization. With all the provisions of this statute being duly observed, it could occur that property owner A would not know that property owner B, dissatisfied with the valuation placed on A's property by the assessor, had protested unsuccessfully to the Board of Equalization and had thereafter appealed to the county court; and A might not discover that B had succeeded in obtaining an order of that court increasing the assessment of A's property until it was too late to obtain relief from such order. The statute (§ 13645, Pope's Digest) requires that notice be given to a property owner whose assessment has been increased by the Board of Equalization, but does not require notice to a property owner whose assessment is protested before but not raised by the Board of Equalization.

To constitute "due process" it is essential that, in proceedings to assess and collect taxes, the property owner have notice either from the tax law itself, or by some method prescribed in the tax law, of every essential step in such proceedings.

Mr. Justice FIELD, discussing the necessity of provision in a tax law for notice to the property owner, in the case of *County of San Mateo* v. *Southern Pacific Railroad Company*, 13 Fed. 722, said: "There being, then, no provision of law giving to the company notice of the action of the state board, and an opportunity to be heard respecting it, is the assessment valid? Would the taking of the company's property in the enforcement of the tax levied according to the assessment be depriving it of its property without due process of law? It seems to us there can be but one answer to these questions. There is something repugnant to all notions of justice in the doctrine that any body of men can be clothed with the power of finally determining the value of another's property, according to which it may be taxed, without affording to him an opportunity of being heard respecting the correctness of their action. . . . We cannot assent to any such doctrine. . . . Notice is absolutely essential to the validity of the proceeding in any case; it may be given by personal citation, and in some cases it may be given by statute; but given it must be in some form."

The Supreme Court of Appeals of Virginia, in the case of *Heth* v. *City of Radford*, 96 Va. 272, 31 S. E. 8, said: "Imposing taxes or levies is a *taking* of property. The owner is entitled to be heard before the charge is fully established against him. If he is not afforded an opportunity to be heard upon the question of the assessment of his property for taxation, the tax or levy is unlawfully exacted of him, for otherwise he is deprived of his property without due process of law, in violation of the fourteenth amendment of the Constitution of the United States. . . . It is sufficient to say that where notice to the party to be affected and an opportunity for him to be heard is not provided for in the law under which

the assessment is made or the taxes and levies laid, the law is unconstitutional and void, and the assessment or levy is illegal.''

This court, in the case of *Massey* v. *Arkansas & Missouri Highway District in Pulaski County,* 163 Ark. 63, 259 S. W. 387, said: ''It contains no provision for notice of assessments and a hearing to be afforded to owners of property, and, unless the statute is connected up with the original act creating the district, which contains such provisions, then the statute is void, for the reason that, where the lawmakers delegate to subordinate agencies or other tribunals authority to make assessments, owners of property are entitled to a hearing, otherwise it constitutes the taking of property without due process of law.''

The fact that, in the case at bar, appellees actually knew of the proceeding and participated therein does not in any wise dispense with the necessity that the law itself must, in order to satisfy the requirement of the ''due process'' clause of the constitution, provide for notice to be given to the property owner in a proceeding designed to raise his assessment. In determining the constitutionality of a statute of this kind courts must consider, not what may have been done in the case being reviewed, but what might, under the statute, be done in *any* case; and, as we have pointed out above, a property owner might never learn of a raise made in his assessment made in pursuance of this statute until it was too late for him to contest.

Almost the identical question posed here was decided by the supreme court of South Dakota in the case of *Beveridge* v. *Baer,* 59 S. Dak. 563, 241 N. W. 727, 84 A. L. R. 189, in which the court said: ''It is a general rule that 'due process' requires that, after an assessment has been made by an assessor, it cannot be increased by a reviewing board without notice to the taxpayer or opportunity to be heard. . . . What is the effect of the fact that, before the increase was made, notice was actually given to the plaintiff and an opportunity of being heard upon the merits of the proposed increase was actually afforded the plaintiff? These facts do not go to

the constitutionality of the law itself, because in determining whether or not the law is unconstitutional we look, not to what has actually been done under the law, but what the law authorizes to be done under its provision. See *Minneapolis Brewing Co.* v. *McGillivray* (C. C.), 104 F. 258; *State* v. *Miller,* 146 Ia. 521, 124 N. W. 167; *City of Beatrice* v. *Wright,* 72 Neb. 689, 101 N. W. 1039; *Matter of Ellard,* 62 Misc. Rep. 374, 114 N. Y. S. 827; *Meade* v. *Dane Co.,* 155 Wis. 632, 145 N. W. 239; *State* v. *Stark Co.,* 14 N. D. 368, 103 N. W. 913.

" 'The law authorizing the proceedings must require notice or it will be unconstitutional. It is not enough that a person may by chance have notice, or that he may, as a matter of favor or courtesy, have a hearing.' 12 C. J. 1229."

In discussing the same subject, in the case of *Henry L. Coe* v. *Armour Fertilizer Works,* 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027, the supreme court of the United States said: "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits. *Rees* v. *City of Watertown,* 19 Wall. 107, 22 L. Ed. 72, 77. Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires. In *Stuart* v. *Palmer,* 74 N. Y. 183, 188, 30 Am. Rep. 289, which involved the validity of a statute providing for assessing. the expense of a local improvement upon the lands benefited, but without notice to the owner, the court said: 'It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.' The soundness of this doctrine has repeatedly been recognized by this court. Thus, in *Security Trust & S. V. Co.* v. *Lexington,* 203 U. S. 323, 333, 51 L. Ed. 204, 208, 27 Sup. Ct. Rep. 87, the court, by Mr. Justice PECKHAM, said, with respect to an assessment for back taxes:

'If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute the taxpayers may have received in a particular case that is material, but the question is whether any notice is provided for by the statute' (citing the New York case). So, in *Central of Georgia R. Co.* v. *Wright*, 207 U. S. 127, 138, 52 L. Ed. 134, 141, 28 Sup. Ct. Rep. 47, 12 Ann. Cas. 463, the court said: 'This notice must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace.' In *Roller* v. *Holly*, 176 U. S. 398, 409, 44 L. Ed. 520, 524, 20 Sup. Ct. Rep. 410, the court declared: 'The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion.' And in *Louisville & N. R. Co.* v. *Central Stock Yards Co.*, 212 U. S. 132, 144, 53 L. Ed. 441, 446, 29 Sup. Ct. Rep. 246, it was said: 'The law itself must save the parties' rights, and not leave them to the discretion of the courts as such.' "

The supreme court of Oklahoma, dealing with a somewhat similar question, in the case of *Barrett, et al.,* v. *Board of Commissioners of Tulsa County,* 185 Okla. 111, 90 P. 2d 442, said: "The situation here presented is comparable to an attempted increase of the tax burden on property by an attempted increase of the assessment after it has been made by the assessor, of which, it is said generally in treating of the necessity of notice in 12 Am. Jur. 334, Par. 642 (subject 'Constitutional Law'), as follows: 'It is a general rule that "due process" requires that after an assessment has been made by an assessor, it cannot be increased by a reviewing board without notice to the taxpayer or opportunity to be heard. Hence, a statute giving a reviewing board power to increase individual assessments without notice to the taxpayer or provision for review is unconstitutional as denying due process. The law authorizing such proceedings must require notice or it will be unconstitutional. It is not enough that a person may by chance have notice or that he may as a matter of favor or courtesy have a hearing. A statute giving to a tax commissioner power to increase individ-

ual assessments, without providing for notice to the taxpayer other than is given by the fact that the time of the meeting of the commission is fixed by law, does not afford the notice necessary to due process . . .' "

The statute invoked here, in so far as it authorizes an appeal by one property owner from action of the Board of Equalization in refusing to raise the assessment of another property owner, without requiring any kind of notice to the property owner whose assessment is being questioned, contravenes the fourteenth amendment to the constitution of the United States and is therefore void. This conclusion obviates the necessity of consideration of other questions raised.

The lower court properly sustained the motion to dismiss, and its judgment is affirmed.

McHaney, J., concurs.

McFaddin, J., dissents.

The Chief Justice did not participate in the consideration or determination of this case.

McHaney, J. (concurring). I agree with the other members of the court that the failure of the statute, § 13671, to require notice to the owner of an appeal by one property owner from the action of the Equalization Board on another property owner's assessment, is a denial of due process, and, therefore, void as to such other property owner. But I do not agree that § 13671 authorizes such an appeal, or that it authorizes one property owner to protest the assessment or to petition the Equalization Board to raise the assessment made by the assessor of another's property.

Said section does provide that "Any property owner may . . . apply to the Equalization Board for the adjustment of the assessment of his own property or that of another person as assessed by the county assessor . . ." Also, in the next paragraph, that "Any property owner may, in person, by agent, petition or letter, apply to the Equalization Board for the adjustment of the assessment of his own property or that of another

person as equalized by the Equalization Board . . ."
Also, in the next paragraph it provides that the "assessor
or any property owner who may feel aggrieved at the
action of the Equalization Board may appeal" to the
county court. I do not feel that the statute clearly gives
the right to one person to protest the assessment of
another person before the Equalization Board, and, if he
loses, to appeal to the county court.

There was a time that such right was conferred.
Section 3 of Act 249 of 1911, so provides, as follows:
"Any taxpayer . . . may appear before the Board
of Equalization and file his objection to the assessment
of property of another taxpayer either as made by such
taxpayer before the assessor, or as reduced by the Board
of Equalization," and provides for an appeal to the
county court, thence to the circuit court, and to this court.
But this act was repealed by Act 147, p. 132, § 11, of 1919.
See § 9911, C. & M. Digest. The present statute was
enacted in 1929. See § 30 of Act 172 of 1929, now § 13761
of Pope's Digest. This statute does not, as did the Act
of 1911, give one property owner the right to "object"
to the assessment of another property owner, but only
to apply to the board for the "adjustment" of the assess-
ment of his own or of another's property. I would say
that it is a rare bird who applies to the Equalization
Board for the "adjustment" of the assessment of his
own property upward, and the statute confers upon him
only the same right to act for another that he acts for
himself. It is well known that many property owners act
for others in the assessment, equalization and payment
of taxes, and this right is what I think said statute
confers.

For this reason I concur in the result reached by
the court.

ED. F. McFADDIN, Justice (dissenting). This pro-
ceeding was initiated by Pulaski County, the City of
Little Rock, and the Little Rock School District (all
hereinafter called "petitioners"), in order to obtain
larger assessed valuation of the banks hereinafter listed
(appellees here). The success of the proceedings would

have allowed more revenue for these governmental subdivisions, and resulted in greater tax payments by the banks. Here are the assessments made by the banks, and adopted by the county assessor:

| | |
|---|---|
| Commercial National Bank | $370,841.00 |
| Peoples National Bank | 112,981.31 |
| W. B. Worthen Co. | 201,300.00 |
| Union National Bank | 267,432.41 |
| Twin City Bank | 44,795.00 |

Here are the assessments asked by the petitioners, first adopted, but later abandoned by the county assessor:

| | |
|---|---|
| Commercial National Bank | $651,882.00 |
| Peoples National Bank | 207,164.63 |
| W. B. Worthen Co. | 592,596.25 |
| Union National Bank | 558,504.55 |
| Twin City Bank | 96,239.00 |

Here are the assessments made by the Board of Equalization when the assessments reached that body:

| | |
|---|---|
| Commercial National Bank | $332,190.00 |
| Peoples National Bank | 112,981.31 |
| W. B. Worthen Co. | 297,435.00 |
| Union National Bank | 267,432.41 |
| Twin City Bank | 44,795.00 |

It will be observed that the Board of Equalization lowered the assessment of the Commercial National Bank, and raised the assessment of W. B. Worthen Co., and left the other three assessments unchanged. The petitioners went to the county court for relief. From an adverse holding, they appealed to the circuit court.

In the circuit court, the banks filed a motion to dismiss: raising, for the first time, the question about § 13671, Pope's Digest, not providing for notice or summons to be issued out of the county court and served on the banks. I call particular attention to the fact that no such motion was made in the county court, and no objection of any kind was there made to the regularity of the appeal. The order of the county court recites that the banks appeared by their respective attorneys.

The majority opinion of this court is sustaining this motion to dismiss, on the theory that § 13671, Pope's Digest, did not provide for notice to be served on the property owner when any petitioner went from the Board of Equalization to the circuit court. There are two answers to the contention made by the banks, and sustained by the majority opinion, and these answers are: (1) the statute provides for notice, and (2) the banks appeared in the county court, and thus waived any question of notice. We discuss these points.

I. *The Statute Provides for Notice.* The majority opinion quotes § 13671 *in extenso,* and then says of that statute: "But the statute makes no provision whatever for any sort of notice to the property owner whose assessment is thus attacked."

I submit that the statute—inferentially, at least—provides for notice, because it says that after the appeal is lodged in the county court, the clerk of the court "shall summon the members of the board and issue such process as said assessor, board, or county judge may request for witnesses and evidences of amount and value of property . . ." It is hard to believe that the county judge would hear the matter in the absence of the property owner affected, particularly when the statute says the county judge may request evidences of amount and value of the property. It seems clear to me that the county judge, under this section, should and would have the property owner before him. Certainly, that is what happened here, for the judgment of the county court—as previously noted—shows that the banks appeared in the county court. It is carrying those mysterious words "due process" past the ultimate to hold—as the majority does here—that there was no provision for notice, when the statute says that the county judge has a right to request the witnesses and evidences of amount and value of the property. It seems clear to me that this statutory provision satisfies the requirement of due process.

II. *The Banks Appeared in the County Court, and thus Waived Any Question of Notice.* Section 28 of Art. VII of the Constitution of Arkansas says:

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, . . ."

This proceeding by the petitioners in the county court certainly related to taxes. The county court is a judicial court. When the petitioners filed the appeal in the county court, the banks could have entered—and in fact *did* enter—their appearance. They contested the matter in the county court on its merits, and thereby lost any right to raise any question of any defect in notice. The only purpose of notice is to supply the absence of knowledge. When the banks knew of the proceedings in the county court, and entered their appearance and contested the assessments, they waived any notice.

If a case is filed in a court (and I have pointed out that the county court is a judicial court), and the opposing party appears and defends the case on its merits without raising any question of summons, then such a defense constitutes a waiver of process and service thereof. Cases so holding are collected in West's Arkansas Digest, "Appearance," § 20. For cases concerning the effect of failure to object to informality of appeal, see West's Arkansas Digest, "Appeal and Error," § 228. I contend that it was too late for the banks, on appeal in the circuit court, to raise for the first time a question that they had not raised in the county court, and a question such as this question of notice—which could be waived by appearance.

The matter of the assessment of personal property in Arkansas is very serious; and I regret to see the majority of this court dispose of this case on a procedural point rather than on the merits. The real question is, whether the assessments as offered by the banks were correct, or whether the assessments as contended for by the petitioners were correct. It would be far better, as I see it, for the case to be decided on its merits, so that taxpayers and assessing officials would know exactly how property should be assessed. My mind is open on the question of which side—that is, the banks or the petitioners—is correct on the formula for allowing

valuation and assessment. I dissent because the affirmance of this case is on a procedural point, and the merits of the case have not been considered.