J. Richard WALLACE, W. Robert Wallace and Raymond L. Wallace *v.* MISSOURI IMPROVEMENT COMPANY

87-142                                        740 S.W.2d 920

Supreme Court of Arkansas
Opinion delivered December 14, 1987

*Daily, West, Core, Coffman & Canfield*, by: *Ben Core*, for appellants.

*Friday, Eldredge & Clark*, by: *Meredith P. Catlett*, for appellee.

JOHN I. PURTLE, Justice. This case concerns a dispute over the ownership of the mineral rights to a certain tract of land in Logan County, Arkansas. This particular tract of land, along with many others, was condemned by the United States in 1942 and subsequently used as a military base known as Fort Chaffee. The trial court held that the appellee, the Missouri Improvement Company, is the owner of the mineral interests because the appellee's predecessor in title, which was the record owner of these interests at the time of the condemnation, never received any notice from the United States of the taking. The appellants, who are claiming the mineral rights through a quit claim deed from the United States in 1948, contend that the federal government acquired the full fee simple title in the condemnation proceeding and therefore title to the minerals is in the appellants. We hold that the trial court was correct in its decision that title to these mineral interests is in the appellee.

Prior to 1934 the Missouri Improvement Company's prede-

cessor in title, the Missouri Pacific Railroad, owned both the surface and mineral rights dating from a land grant from the United States. In 1934 the railroad deeded the property in question to Owens, who in turn deeded it to Glass. The railroad reserved the mineral interest in the property in the 1934 conveyance and since that time the separate mineral assessment has continued in the name of the railroad and its successor in interest, the appellee, and the taxes on this separate assessment have been paid in full. Mineral interests that have been severed from the surface interests are listed in a separate place in the same tax book in Logan County as are the lands. In January, 1942, the United States filed a civil action wherein it condemned the land in question under the authority of 40 U.S.C. § 258a. The Declaration of Taking stated that the estate taken was "the full fee simple title thereto." Compensation was paid to the then current landowners. However, the parties to the present action stipulated in the trial court that the Missouri Pacific Railroad was not made a party to the condemnation proceeding, that the railroad never received any kind of notice of the taking, and that the railroad never received any compensation for the mineral rights to the land in question. After the war this part of Ft. Chaffee was no longer needed by the government, and the United States quit claimed the title to the property back to Glass, from whom it had taken the property. The appellants claim title to the mineral rights through this quit claim deed from the federal government to Glass.

The issue presented to this court is whether the taking by the government in 1942 included the taking of the mineral rights. As previously stated, the mineral rights had already been severed from the surface rights before the taking by the government. The parties to this appeal did not cite, and we have not found, a case directly in point. There is no question about the government's authority to take the property as it did, but whether title to the mineral interest was also taken is the specific issue in this case. The government did not need or use the mineral rights during its possession of these lands.

From the time of the adoption of the United States Constitution it has been recognized that due process dictates that a person whose property is sought to be condemned is entitled to notice and a reasonable opportunity to be heard. Since appellee was not

made a party to the condemnation proceeding and did not receive notice, actual or constructive, we must determine if title to the mineral rights was acquired by the government. Title to the mineral rights depends upon the resolution of this issue.

More than 100 years ago the United States Supreme Court in *Windsor* v. *McVay*, 93 U.S. 274 (1876), held:

> That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted. Until notice is given, the Court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject matter.

In *Phillips* v. *United States*, 151 F.2d 645 (7th Cir. 1945), the court quoted the general rule as follows:

> Concededly, as a general rule, one who has an interest in property about to be condemned and who is not made a party defendant is not affected by the proceeding and loses no rights thereby . . . .

The United States attempted to quiet title to certain lands in the case of *United States* v. *Chatham*, 323 F.2d 95 (4th Cir. 1963). The court held that in the absence of actual notice to the record owners of land plus gross misdescription in the publication of notice of condemnation vitiated the entire proceedings to the extent that they purported to affect the title or the possessory rights of the record owners. Speaking for the court, Judge Haynsworth stated: "The United States acquired no interest in land which it sought to condemn when it gave no notice of the proceeding to the owners and did not physically seize the land." The opinion went on to hold that when condemnation plaintiffs take the easy course, they should not be heard to say that the proceedings foreclosed the rights of interested parties who were readily identifiable, particularly when the government knew, or reasonably should have known, that such persons had a substantial interest in the litigation. *Chatham* recognized, as do we, that sometimes procedural defects in condemnation proceedings give rise only to an independent action for just compensation. See, e.g., *Schroeder* v. *City of New York*, 371 U.S. 208 (1962). In such instances, the actual taking is obvious to all and in clear

contravention of the owners' right to possession.

The question of the title to property taken by the government in condemnation proceedings was again considered by the Fourth Circuit in the case of *Fulcher* v. *United States*, 632 F.2d 278 (4th Cir. 1980). The court recognized that the property owner's right is founded upon the due process and just compensation clauses of the Fifth Amendment to the United States Constitution. The *Fulcher* court stated that 40 U.S.C. § 258a and Federal Rules of Civil Procedure, Rule 71(A)(c)(2), are the means for implementing these constitutional guarantees. Rule 71(A)(c)(2) requires the government to join as defendants only persons having or claiming an interest in the property whose names are known. The rule further provides that the government must add as defendants all persons "whose names can be ascertained by a reasonably diligent search of the records" and further directs that all others whose names cannot be ascertained may be designated as "Unknown Owners."

The chief argument was whether Fulcher was entitled to make his claim against the government in view of the fact that the declaration of taking had stated the government was taking "title to the said lands in fee simple absolute." There had been an attempt at notification by the publication in a local newspaper in North Carolina, which attempt the court found had failed to notify Fulcher who was a resident of California. The court held that Fulcher was entitled to proceed under 28 U.S.C. § 2409a against the government for compensation. There was no issue concerning severed mineral rights in *Fulcher*. The Fourth Circuit in *Fulcher*, supra, distinguished *United States* v. *Chatham*, supra, on the basis of the government's complete failure (in *Chatham*) to comply with the essential provisions of the condemnation statute dealing with notice and the description of the land, and held that upon the filing of a declaration of taking and making a deposit of estimated compensation, the title to condemned land vests indefeasibly in the government, subject to an equitable interest in an unnotified condemnee to receive just compensation. The Eighth Circuit, relying upon *Fulcher*, reached the same result in *United States* v. *Herring*, 750 F.2d 669 (8th Cir. 1984).

An argument presenting some similarities to the present case is *Higginson* v. *United States*, 384 F. 2d 504 (6th Cir. 1967),

where the former property owners attempted to obtain title to the mineral rights. The Higginson property was taken by the United States government for military purposes and became known as Camp Breckenridge, Kentucky. The camp was inactivated after it was no longer needed for military purposes. After oil and gas was discovered on the property, the United States government sold the mineral interest for a great deal more than the compensation given to the land owners when the property was taken. Higginson argued that although the property was taken in fee simple absolute, there was no compensation given for the mineral rights because no value had been established for these rights at the time of the taking. Thus, he argued that the taking as to the mineral rights was a violation of the Fifth and Fourteenth Amendments which require due process and just compensation. The holding was that the government took title to the mineral rights as well as the surface and the former land owners were not entitled to additional compensation for the mineral rights. The court further stated that even if Kentucky law applied, which it held did not, the United States government owned all of the interest in these lands, including the mineral rights.

We have discussed a number of cases dealing with the taking of private property for government purposes where there has been no previous severance of the mineral rights. We think the rationale used in these cases is valid when the mineral rights have not been separated from the land prior to the taking by the government. However, in the present case there was a definite, distinct and legal separation of the mineral rights prior to the government's condemnation of these lands. The assessment of mineral rights was and is a matter of public record contained in the same tax book where the real estate taxes are listed. Certainly a reasonable search of the records would have revealed that the appellant was the owner of this separate property interest. Such a search was a necessary prerequisite to the condemnation and no attempt to cure this defect was made by the government.

No notice of any kind was given to the appellee that its property was being taken. The basic constitutional requirements of notice and a reasonable opportunity to be heard are mandatory prerequisites to divest a property owner of his interest. In the absence of any notice, actual or constructive, the government did not acquire the separate mineral rights of the appellee

when the lands were condemned by the government in 1942. Therefore, the government never had title to the mineral rights and did not convey these rights when it subsequently executed the quit claim deed to appellants' predecessors in title.

Affirmed.