FIRST NATIONAL BANK of Izard County
*v.* ARKANSAS STATE BANK COMMISSIONER
and the Bank of North Arkansas

89-133                                        781 S.W.2d 744

Supreme Court of Arkansas
Opinion delivered December 18, 1989

*Ivester, Skinner & Camp, P.A.*, by: *Hermann Ivester* and *Valerie F. Boyce*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee Arkansas State Bank Commissioner.

*Highsmith, Gregg, Hart, Farris & Rutledge*, by: *John C. Gregg*; and *Wilson, Engstrom, Corum & Dudley*, by: *Wm. R. Wilson, Jr.* and *Gary D. Corum*, for appellee The Bank of North Arkansas.

JACK HOLT, JR., Chief Justice. On September 27, 1988, the appellee, The Bank of North Arkansas (BNA), which has its principal bank located in Melbourne, Arkansas, filed an application with the appellee, Arkansas State Bank Commissioner (Commissioner), requesting permission to establish a branch bank in Calico Rock, Arkansas, where the appellant, First National Bank of Izard County (FNB), has its principal bank located. FNB objected to BNA's application, although it had recently opened a branch bank in Melbourne, and filed a formal protest, pursuant to Ark. Code Ann. § 23-32-1203(d) (1987), and requested interrogatories from BNA on October 13, 1988. Calico Rock is located in Izard County, and both BNA and FNB have their main offices in Izard County.

On October 20, 1988, the Commissioner responded by letter to FNB's interrogatory request and stated that BNA would not be required to answer the interrogatories until he had determined if a hearing would be necessary. FNB protested this decision on October 24, 1988. The next day, a state bank examiner filed a report recommending approval of BNA's application.

The Commissioner advised both parties on October 26, 1988, that an administrative hearing was not necessary and that, as a result, BNA was not required to answer FNB's interrogatories. Subsequently, on October 31, 1988, the Commissioner entered his order approving BNA's application.

FNB requested in writing, on November 28, 1988, a copy of the bank examiner's report, which was sent by the Commissioner

two days later. FNB then filed a petition for review in the Circuit Court of Pulaski County and obtained a stay of the Commissioner's order.

The Commissioner's order was affirmed by the circuit court on March 21, 1989. Thereafter, FNB filed a notice of appeal and obtained a stay from this court conditioned upon FNB's filing a proper supersedeas bond.

FNB appeals the Commissioner's order granting approval of BNA's application for a branch bank in Calico Rock based on three points of error: 1) that the order is in violation of constitutional and statutory provisions and made upon unlawful procedure, 2) the statute allowing discretionary hearings in protested cases is unconstitutional, and 3) the findings of fact in the order are in violation of statutory provisions and are not supported by substantial evidence. In addition, FNB requests that any remand to the Commissioner should specify procedures required to uphold statutory and constitutional provisions.

We find no merit in FNB's points on appeal and affirm.

## VIOLATION OF CONSTITUTIONAL AND STATUTORY PROVISIONS

FNB initially contends that the Commissioner's order is in violation of constitutional and statutory provisions and made upon unlawful procedure. FNB bases this argument on the perception that its rights to due process have been denied due to the discretionary authority imbued in the Commissioner to grant or deny an application for a branch bank without an adjudicatory hearing. FNB claims that it has a franchise, by virtue of being a federally chartered bank, and that its due process rights can only be preserved and protected through a hearing at which all parties offer evidence.

The pertinent legislation regarding the procedure of establishing a full service branch office is contained in Ark. Code Ann. § 23-32-1203 (Supp. 1989), which provides in pertinent part as follows:

> (c) Notice of the filing of the application shall be given by the commissioner to every other bank in the city or town in which the branch applicant bank is located. This notice

shall be given by mail.

(d)(1) Any formal protest to a branch bank application must be received in writing detailing the reasons for protest within fifteen (15) calendar days of the date the commissioner's notice of an application was mailed.

\* \* \* \*

(e) An adjudicatory or administrative hearing shall not be required on a branch bank application.

■ The first rule of construction as to a piece of legislation is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Eldridge* v. *Board of Correction*, 298 Ark. 467, 768 S.W.2d 534 (1989) (citing *Bolden* v. *Watt*, 290 Ark. 343, 719 S.W.2d 428 (1986)).

■ In addition to the principle that statutes are presumed not to be unconstitutional, *Craighead County Bd. of Educ.* v. *Henry*, 295 Ark. 242, 748 S.W.2d 132 (1988) (citing *HCA Medical Services of Midwest, Inc.* v. *Rodgers*, 292 Ark. 359, 730 S.W.2d 229 (1987)), we have also recognized that administrative agencies are better equipped, by specialization, insight through experience, and more flexible procedures, than courts to determine and analyze underlying legal issues affecting their agencies, which accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Arkansas State Hwy. Comm'n* v. *White Advertising Int'l*, 273 Ark. 364, 620 S.W.2d 280 (1981) (citing *Gordon* v. *Cummings*, 262 Ark. 737, 561 S.W.2d 285 (1978)).

■■ Generally, the basic constitutional due process requirements of notice and a reasonable opportunity to be heard are mandatory prerequisites to divest a property owner of his interest. *Wallace* v. *Missouri Improvement Co.*, 294 Ark. 99, 740 S.W.2d 920 (1987). Although we agree that FNB has a constitutionally protected right to exercise the property interest vested in its franchise free from unlawful competition and therefore has standing to challenge unlawful competition, *see Frost* v. *Corporation Comm'n*, 278 U.S. 515 (1929); *Webster Groves Trust Co.* v. *Saxon*, 370 F.2d 381 (8th Cir. 1966), the pivotal question is

whether due process gives FNB the right and standing to challenge lawful competition and, if so, how much due process must be afforded to this right and did FNB receive at least the minimum necessary to survive this constitutional challenge?

An illustrative discussion of this issue is presented in C. Koch, *Administrative Law and Practice* 564-67 (1985):

> Indeed, over the years, the Supreme Court often has rejected the argument that trial-type procedures always are required by the Due Process Clause. ['Once it is determined that due process applies, the question remains what process is due.'] The procedural components that will satisfy the Due Process Clause's requirements will vary from situation to situation. The proper combination of procedures must reflect a practical solution sensitive to both the individual's rights and the purpose of the administrative program.
>
>                 \* \* \* \*
>
> Perhaps the most influential effort to develop a technique for analysis is Justice Powell's opinion in *Mathews* v. *Eldridge* [424 U.S. 319 (1976). Eldridge had been receiving social security disability benefits, but a state agency terminated his eligibility. Eldridge submitted a written protest to the agency, but otherwise had no opportunity, prior to termination, to participate in the decisionmaking.]. The only issue before the Court was whether the agency had accomplished the termination of Eldridge's benefits according to due process requirements.
>
> In answering this question, Justice Powell focused on three factors critical to this analysis:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Using this analysis, we conclude that FNB's due process rights were not violated. Under the first factor, FNB is only indirectly affected because it does not have an exclusive license to operate in the area where BNA requested to establish a branch, and approval of the branch application does not exclude FNB from operating in that area. The aspect of resulting competition was specifically addressed in the bank examiner's report:

> The protest lodged by FNB contends that the approval of the proposed branch will have a detrimental effect on the competition in Calico Rock. FNB has consistently reported earnings in the 90th percentile of its peer group. Capitalization is in the upper 90th percentile of its peer group. The cost of funds is well below 4.50%. The contention is perhaps well founded due to the fact that the bank [FNB] will have to meet the challenge of competition. However, there is no evidence submitted to support irreparable harm will be committed due to the introduction of competition.

> The approval of the applicant's request will afford the populace of the trade area a choice of banking institutions, therefore promoting public convenience.

The second factor, addressing the risk of an erroneous deprivation of FNB's interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, also favors upholding the constitutionality of the statutory provisions.

Although section 23-32-1203(e) does not require a formal hearing, other provisions included in that section adequately protect FNB's rights under these circumstances. Specifically, 1) subsection (c) requires that notice of the filing of the application be given to every other bank in the city or town in which the branch applicant bank is located, 2) subsection (d) provides for the protest of a branch bank application, (3) subsection (f) states that the commissioner's decision on a branch bank application will be in the form of final findings of fact, conclusions of law, and that the order be given by the commissioner within a reasonable time period, and 4) subsection (g) allows an applicant or official protestant thirty calendar days in which to appeal the commissioner's order to the appropriate circuit court.

8

In this case, the commissioner clearly gave FNB notice of BNA's branch bank application, which FNB protested. The commissioner issued findings of fact and conclusions of law in its order dated October 31, 1988, and FNB exercised its right to appeal the order to the Pulaski County Circuit Court.

■ These procedural safeguards are sufficient to protect FNB's interest. The value of additional safeguards requested by FNB, in the form of discovery and a hearing, is outweighed by the resultant increase in administrative burdens, addressed in Justice Powell's third factor to be considered.

Finally, FNB argues that section 25-15-208(a)(3) of the Administrative Procedure Act, providing that in "every case of adjudication . . . [o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved," conflicts with section 23-32-1203(e) in the branch banking subchapter, which unequivocaly states that an "adjudicatory or administrative hearing shall not be required on a branch bank application."

Section 25-15-211, addressing licenses in administrative adjudications, provides as follows: "(a) When the grant, denial, or renewal of a license is required by law to be preceded by notice and an opportunity for hearing, the provisions of this subchapter concerning cases of adjudication apply."

■ Thus, the discretionary authority for an adjudicatory or administrative hearing contained in section 23-32-1203(e) precludes the application of section 25-15-208(a)(3) by virtue of section 25-15-211. Simply stated, in this case the Administrative Procedure Act does not apply to the activities of the Commissioner.

In summary, the Commissioner's action does not affect FNB's authority or right to conduct its banking operations. The establishment of a branch bank by BNA does not constitute unlawful competition. The Commissioner complied with the statutory requirement of notice and a reasonable opportunity to be heard. Finally, neither the language nor the meaning of Ark. Code Ann. § 23-32-1201 (1987 and Supp. 1989) et seq. is ambiguous, and the Commissioner's decision not to have a hearing is within his discretion.

Thus, we find the statute is not in violation of constitutional prerequisites.

## DISCRETIONARY HEARING UNCONSTITUTIONAL IN PROTESTED CASES

FNB contends that the statute allowing discretionary hearings in protested cases is unconstitutional unless it is interpreted to allow a discretionary waiver of a hearing in non-protested cases.

As noted previously, statutes are presumed not to be unconstitutional, *Craighead County Bd. of Educ., supra*, and all doubts must be resolved in favor of upholding its constitutionality. *Holland* v. *Willis*, 293 Ark. 518, 739 S.W.2d 529 (1987).

Additionally, a rational basis for the discretionary hearings can be found in the analogous case of *Webster Groves Trust Co., supra*, where the Eighth Circuit Court of Appeals discussed the rationale for not requiring the Comptroller of Currency to hold a formal hearing at which commercial banks could present objections relative to issuance of new national bank charters:

> The very nature of the decision required by the Comptroller indicates that a formal adversary type hearing would be of little benefit to him in the discharge of his discretionary powers. There is the further factor present that if bank applicants were subjected to severe public cross-examination, public presentation of unfavorable evidence and were forced to disclose their future plans and programs to competitors, public confidence in the banking system could be adversely affected.

In discussing the discretionary nature of the Comptroller's underlying actions, the court in *Webster Groves Trust Co., supra*, stated:

> We believe that competing banks, as interested parties, have a right to challenge illegal acts of the Comptroller and that the Comptroller's discretionary actions are not immunized from judicial review, but we also believe that neither the National Banking Act, 12 U.S.C. § 21 et seq., the Administrative Procedure Act, nor procedural due process requires a formal hearing of the type sought by

appellant.

Also, FNB's sole reliance on *Pulaski County* v. *Commercial Nat'l Bank*, 210 Ark. 124, 194 S.W.2d 883 (1946), is misplaced.

In that case, we noted that where notice to a party to be affected and opportunity for him to be heard were not provided for in the law under which an assessment of taxes was made, the law was unconstitutional and void and the assessment was illegal. However, the statute at issue was held to be void insofar as it authorized an appeal by one property owner from the action of the Board of Equalization in refusing to raise the assessment of another property owner without requiring any kind of notice to the property owner whose assessment was being questioned.

As we noted in FNB's first argument, FNB does not have a property interest that is recognized as being entitled to the degree of protection it claims. FNB's rights are not directly affected; in fact, FNB is affected only to the extent that the Commissioner's order allows regulated competition in a regulated industry. Consequently, the mandates of due process are not violated, and we hold the statute to be constitutional.

## FINDINGS OF FACT

Finally, FNB argues that the findings of fact in the Commissioner's order are in violation of the Administrative Procedure Act (Ark. Code Ann. § 25-15-210 (1987)) and not supported by substantial evidence. Here again, the Administrative Procedure Act does not apply to the extent that it is superceded by the branch banking provisions contained in section 23-32-1201 et seq.

Section 25-15-210(b)(2) provides in pertinent part that "[a] final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings . . . ."

Again, section 25-15-211 provides that the provisions of the subchapter concerning cases of adjudication in the Administrative Procedure Act do not apply unless "the grant . . . of a license is required to be preceded by notice and an opportunity for hearing." Section 23-32-1203(e) specifically states that a formal

hearing is discretionary in a branch bank application and would therefore preclude the application of section 25-15-210(b)(2).

Section 23-32-1203(f) of the branch banking subchapter provides that in the establishment of a full service branch office:

> The commissioner's decision on a branch bank application will be in the form of final findings of fact, conclusions of law, and an order given by the commissioner within a reasonable time period following the expiration of the fifteen (15) calendar day formal protest period.

■ Thus, the case law strictly interpreting section 25-15-210(b)(2) would only be applicable to those cases where notice and a hearing were both required. In contrast, given the informal nature of the branch bank application procedure, the Commissioner's findings of fact are sufficient to satisfy the requirements of section 23-32-1203(f).

We note that the Commissioner incorporated the following facts and information in his order:

> (1) Reliance on the written evidence submitted on behalf of both BNA and FNB, as well as an on-site investigation by state bank examiners.

> (2) BNA is a banking corporation organized under a charter issued by the State of Arkansas with its principal place of business in Melbourne, Izard County, Arkansas.

> (3) BNA provided evidence that suitable physical facilities would be provided for the full service branch.

> (4) BNA maintained a good capital structure and a good financial condition. At the time of the Examiner's Investigation for the proposed branch, BNA had 8.5% total capital to asset ratio.

> (5) BNA maintained good future earnings prospects, good management, and was in conformity with Arkansas law and State Bank Department Rules and Regulations, according to the Examiner's Investigation Report.

> (6) Evidence provided in the branch application indicated that BNA maintained adequate fidelity coverage.

(7) The proposed service area for the proposed branch was in the towns of Calico Rock and Pineville and in the communities of Wideman and Dolph, Arkansas.

(8) Local conditions assured a reasonable promise of successful operation of the proposed full service branch. The Examiner's Investigation Report provided evidence that there were four financial institutions in Izard County, but only two in the proposed trade area.

(9) Public convenience and necessity would be promoted by the establishment of the proposed branch. Evidence provided by BNA and cited in the Examiner's Investigation Report indicated that BNA planned to offer all the products of a full service branch.

(10) The Examiner's Investigation Report indicated that FNB was the only bank in Calico Rock and that it maintained a capital to asset ratio in the top 95 percentile of its peer group. The investigation also indicated that FNB had maintained an extraordinary earnings record, due in part to its below peer costs of funds. There was no indication that the establishment of BNA's branch would have a significant adverse effect on competition or lead to destructive competition.

We find sufficient compliance with section 23-32-1203(f) and conclude that the Commissioner's order was based on substantial evidence.

Affirmed.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. I would not reach the constitutional questions in this case. Instead, I would reverse due to the fundamental failure of the commissioner to enter any findings of fact sufficient to support his order.

When we have reviewed administrative decisions, we have required strict compliance with a statute that requires underlying findings of fact. See *First Federal Savings & Loan Assoc. of Malvern* v. *Arkansas Savings & Loan Assoc. Bd.*, 257 Ark. 985, 521 S.W.2d 542 (1975); *First State Bldg. & Loan Assoc.* v. *Arkansas Savings & Loan Bd.*, 257 Ark. 599, 518 S.W.2d 507

(1975). The requirement that the underlying facts be stated is primarily for the benefit of the reviewing court and the failure to comply with this requirement is not a minor and inconsequential matter. *Arkansas Savings & Loan Assoc. Bd.* v. *Central Ark. Savings & Loan Assoc.*, 256 Ark. 846, 510 S.W.2d 872 (1974). The reason we must have sufficient findings of fact is to have an effective appellate review. If there are no facts, or insufficient findings of fact, we cannot say what the basis of the order is.

A comparison of some of the commissioner's findings of fact with the statutory language shows that the commissioner has recited legal conclusions rather than explicit facts:

> *Statutory language*: Public convenience and necessity will be promoted by the establishment of the proposed full service branch.

> *Findings of fact*: Public convenience and necessity will be promoted by the establishment of the proposed branch. Evidence provided by applicant and cited in the Examiner's Investigation indicate that applicant plans to offer all the products of a full service branch.

> *Statutory language*: Local conditions assure reasonable promise of successful operation of the proposed full service branch.

> *Findings of fact*: Local conditions assure a reasonable promise of successful operation of the proposed full service branch. The Examiner's Investigation for the proposed branch provides evidence that there are presently four financial institutions in Izard County but only two in the proposed trade area.

> *Statutory language*: Suitable physical facilities will be provided for the full service branch.

> *Findings of fact*: The Bank of North Arkansas has provided evidence that suitable physical facilities will be provided for the full service branch.

These are not "findings of fact" and are clearly inadequate to assist this court in reviewing the case. This involves an order allowing two banks to operate in a small community of eleven hundred people. Was it a political decision? We will never know.

It certainly does not have a sound factual basis to justify it. The majority sets a bad precedent in approving such a baseless order.

The statute which provides no hearing will be necessary on a branch bank application, Ark. Code Ann. § 23-32-1203(e) (Supp. 1987), radically alters the power of the commissioner to decide the economic well-being of banks and communities. But it was surely not intended to result in unbridled, unchecked, and unaccountable use of power by one person.

The legislature, no doubt, intended for us to see that this power is not arbitrarily used. We have failed at the first opportunity.

I might point out that, while this law only allows branch banks to be established in the bank's own county, that will soon be changed. After December 31, 1993, a branch may be established in a county contiguous to the county where the bank's principal office is located. After December 31, 1998, the branches may be established anywhere in the state. Ark. Code Ann. § 23-32-1202(b)(3) and (4) (Supp. 1989).